UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

JEREMY SPENCER,                )
                               )
                               )
        Plaintiff,             )
                               )
v.                             )        NO. 2:24-CV-00144-DLB-MAS
                               )
JACOB GANSHIRT, *et al.*,      )
                               )
                               )
        Defendants.            )
                               )

REPORT AND RECOMMENDATION

This prisoner civil rights action is before the Court on referral from Chief Judge Bunning [DE 21] for a Report and Recommendation on any dispositive motions, including the parties' cross-motions for summary judgment. Plaintiff Jeremy Spencer ("Spencer") initially filed a Motion for Summary Judgment. [DE 85]. In a single filing, Defendant Jacob Ganshirt ("Ganshirt") responded and tendered his own Motion for Summary Judgment. [DE 86]. Subsequently, Spencer filed a combined Response and Reply [DE 92], and Ganshirt replied [DE 93]. Furthermore, Spencer requested that the Court hold oral arguments on the motions for summary judgment, which this Court denied. [DE 94]. Accordingly, the motions are now ripe for review. For the reasons thoroughly discussed below, the Court recommends that the District Judge grant Ganshirt's Motion for Summary Judgment and deny Spencer's Motion for Summary Judgment.

## I.   FACTUAL BACKGROUND

On September 27, 2023, Plaintiff Jeremy Spencer ("Spencer") was driving north on Oakbrook Drive in Boone County, Kentucky. [DE 86-1 (Uniform Citation); DE 85-7 (Defendant's Answers to Plaintiff's Second Set of Requests for Admissions, Third Set of Interrogatories, and Second Set of Requests for Production of Document)]. Ganshirt was operating his marked Boone County Sherriff's Officer cruiser south on the same road. [DE 85-2, Page ID# 495]. Both vehicles were approaching the Limaburg Road 4-way stop sign intersection.

From here, the factual accounts of the two parties slightly diverge: Ganshirt alleges that Spencer pulled his body over the steering wheel of the vehicle and aggressively banged his hand against the inner windshield while displaying a middle finger in Ganshirt's direction. [DE 85-2, Page ID# 495]. Ganshirt further alleges that Spencer screamed "fuck you" several times while staring in Ganshirt's direction. According to Ganshirt, this behavior caused him to suspect that Spencer may be under the influence of drugs or alcohol, which led him to conduct a U-turn to further observe Spencer's vehicle. While conducting additional observation, Ganshirt saw Spencer's vehicle veer over the white fog line on to the shoulder of the roadway for several seconds on two separate occasions, within several minutes. [DE 86-1; DE 85-5, Page ID# 480].

On the other hand, Spencer admits that he lifted his left hand and extended his middle finger inside of his vehicle. [DE 88 (Deposition of Jeremy Spencer), Page ID# 571]. During his deposition, Spencer initially stated that he did not recall if he went over the fog line, then admitted it was "possible" that he could have gone over

the fog line with his eyes closed.  [DE 88, Page ID #576–78].  When asked if it was possible that he went over the fog line and did not realize, stated, "I would say that's speculation and there's always the possibility."  [DE 88, Page ID# 578].

At that point, Ganshirt activated his blue lights and began the process of pulling Spencer over.  Upon approaching Spencer's stopped vehicle, Ganshirt told Spencer that he pulled him over because he crossed the fog line.  [DE 88, Page ID# 576; DE 86-2 Ganshirt Body Worn Camera ("Ganshirt BWC") at 00:00:20].  Spencer replied, "Yeah. I was probably sneezing.  I have allergies."  [Ganshirt BWC at 00:00:27; DE 88, Page ID# 576; DE 86-1].  Ganshirt did not detect an odor of alcohol coming from inside Spencer's vehicle and did not see any open containers.  [DE 85-3 (Defendant's Objections and Responses to Plaintiff's Second Set of Interrogatories), Page ID#468].  He called for a K-9 narcotics detection unit, but the nearest one was in a neighboring county, thus Ganshirt abandoned that idea, prepared a citation for careless driving in violation of Kentucky Revised Statute § 189.290, and returned to the vehicle to explain the citation and relevant court information to Spencer.  [DE 86-1 (Uniform Citation); Ganshirt BWC at 00:09:22; DE 85-3, Page ID# 468].  Immediately before walking away from Spencer's vehicle, Ganshirt stated, "The only thing I would suggest is, if you don't want to draw attention to yourself, don't flick me off.  Have a good day."  [Ganshirt BWC at 00:09:50].  Ganshirt then returned to his cruiser and both parties left the scene of the stop.

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *See id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 477 U.S. at 248. Then, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 258 (citing *First Nat'l Bank v. Cities Servs. Co.*, 391 U.S. 253 (1968)). Consequently, once the burden shifts, the nonmoving party must do more than raise some doubt or produce a

"scintilla of evidence" in support of its position, it must produce sufficient evidence to require submission of the issue to the jury. *Anderson*, 477 U.S. at 252; *Lucas v. Leaseway Multi Transportation Service, Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990), *aff'd*, 929 F.2d 701, 1991 WL 49687 (6th Cir. 1991). Such evidence must be suitable for admission—but not necessarily admissible—into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).

## III.   ANALYSIS

Spencer sued Ganshirt under § 1983, alleging that Ganshirt violated his constitutional rights by pulling him over and citing him for careless driving. Per Spencer, Ganshirt did this in violation of the Fourth Amendment and retaliated against him because of his protected speech in violation of the First Amendment, both made applicable to the states through the Fourteenth Amendment. [DE 27, Page ID# 107–08]. Ganshirt counters that he had probable cause to stop and cite Spencer, a fact that would negate Spencer's claims.

Before turning to other arguments, the Court must first determine whether Ganshirt had probable cause under the Fourth Amendment.

### A.   FOURTH AMENDMENT

The Fourth Amendment provides that "no Warrants shall issue, but probable cause, supported by Oath or affirmation, and particularly, describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The stop of a vehicle is considered a "seizure" under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Indeed, such a stop must be reasonable to be constitutional. In the context of a traffic stop, reasonableness does not require a

warrant. *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021). Instead, "an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). Because an alleged civil infraction is at the center of this dispute, probable cause is the governing standard.

Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005). In the traffic stop context, probable cause exists where "an officer observes a motorist violate a traffic law." *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020) (citing *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009)). Moreover, "[w]hen a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

Thus, the probative inquiry in this instance is whether Ganshirt had probable cause to stop Spencer, as a sufficient showing of probable cause would preclude a Fourth Amendment claim. Ganshirt argues that Spencer's conduct in crossing the right fog line on two occasions was sufficient to provide probable cause to stop Spencer. [DE 86, Page ID# 509–10]. At first glance, however, there seems to be some factual discrepancy, if ever so slight, between Ganshirt and Spencer's recollection of the events leading to the traffic stop. Because the existence of probable cause in this instance is outcome-determinative, the Court must consider whether either party has

established a genuine issue of material fact as to whether there was probable cause for the stop. *Metlife Securities v. Holt*, No. 2:16-CV-32, 2016 WL 6683586, at *3 (E.D. Tenn. Nov. 14, 2016).

To begin, Spencer argues that the Court cannot consider Ganshirt's recollection of his "bizarre" behavior because it is subjective and speculative characterization, constitutes an impermissible lay opinion under FRE 701, and lacks foundation under FRE 602. [DE 92, Page ID# 671]. Briefly turning to Spencer's evidentiary arguments, Ganshirt's statements rely on firsthand observations and are precisely the perception-based testimony contemplated by the Federal Rules of Evidence. *See Bard v. Brown County*, No. 15-CV-643, 2018 WL 11357533, at *5 (S.D. Ohio Dec. 31, 2018) ("A law enforcement officer who is not qualified by the Court to testify as an expert witness can offer lay opinion testimony only when he has personal knowledge or observation of the facts." (citing *United States v. Kilpatrick*, 789 F.3d 365, 379 (6th Cir. 2015))); *Loadman Grp., LLC v. Banco Popular N. Am.*, No. 10-CV-1759, 2013 WL 1154528, at *3 (N.D. Ohio Mar. 19, 2013) (noting that "inferences, thoughts, and opinions" may be included in an affidavit so long as they are "premised on firsthand observations or personal experience, and established by specific facts"). Here, Ganshirt's description of Spencer's behavior as unusual or indicative of impairment is grounded in his direct observations and, in this case, is admissible evidence. In any event, even excluding these observations, Ganshirt had probable cause to initiate the traffic stop based solely on his observation that Spencer crossed the fog line on two occasions. Accordingly, the admissibility of Ganshirt's

characterization of Spencer's behavior is not dispositive of the Court's probable cause analysis.

In both the citation and his answers to discovery, Ganshirt's recollection of the events remains consistent: He observed Spencer's vehicle veering over the right fog line into the shoulder of the roadway for a few seconds on two occasions prior to initiating a traffic stop. . . . [Spencer] stated the reason for his poor driving was that he was 'sneezing.'" [DE 86-1; DE 85-6, Page ID# 484; DE 85-4, Page ID# 475].

Spencer's testimony is somewhat ambiguous. During his deposition,[1] Spencer initially stated that he did not recall whether he went over the fog line. [DE 88, Page ID# 576]. But, shortly thereafter, he agreed that he told Ganshirt that he was probably sneezing because he recalled sneezing at some point when driving suggesting his acknowledgement that he might have crossed the fog line. From there, Spencer's testimony is muddled on the issue to say the least:

---

[1] The Court must briefly address Spencer's argument that the deposition transcript is not admissible because it consists of testimony that was not corrected after Spencer's filing of a Rule 30(e) errata sheet. [DE 92, Page ID# 687]. Federal Rule of Civil Procedure 30(e) allows a deponent, with appropriate notice before the completion of the deposition, to sign a statement listing changes to the deposition within thirty days of the completion of the deposition transcript or recording. Spencer's deposition objection statement is filed at DE 73 and consists only of objections to the Notice of Deposition. These objections include the fact that Spencer's name was written in all-capital lettering (in the case caption of the Notice) and that his name was misspelled ("Jeremey Spencer" instead of "Jeremy Spencer").

The purpose of Rule 30(e) is to allow corrections to typographical and transcription errors *within* the deposition itself. *See Mullins v. Cyranek*, No. 1:12-CV-384, 2014 WL 3573498, at *2 (S.D. Ohio July 21, 2014) (quoting *Walker v. 9912 East Grand River Assocs., LP*, No. 11-12085, 2012 WL 1110005 (E.D. Mich. Apr. 3, 2012)). Even if Rule 30(e) did function as Spencer believes, Rule 30(b)(2) allows a party to notice a deposition without the name of the intended deponent, allowing "a general description sufficient to identify the person" instead. Thus, it does not logically follow that typographical choices and errors in Spencer's name on the Notice of Deposition would invalidate the entire deposition. Therefore, Spencer's argument regarding the use of the deposition transcript is not well-taken, and the deposition transcript as filed at DE 88 shall be used herein.

Q. So is it fair to say then that there was at least some period of that drive where your eyes were closed because you were sneezing?

A. Sure.

Q. Could you have gone over the fog line while your eyes were closed?

A. Yes, it's possible.

Q. Okay. So then you're not saying you know that you did go over the fog line, but is it fair to say that you don't know for sure if you did not?

A. I'm sorry. Can you just repeat that again?

Q. Sure. So I know -- okay. Let me just ask. So did you go over the fog line? I believe I asked you that and you said you weren't sure.

A. Yeah, I'm going to object because I think that calls for speculation, but without waiving the objection. I don't believe I went over the fog line.

Q. But your eyes were closed at least at some period during that drive because you were sneezing, correct?

A. Yes.

Q. Okay. So when I asked you -- so you're not saying that you did it, but is it also true that you're not necessarily disagreeing that you went over the fog line?

A. Am I disagreeing that I went over the fog line; is that what you're asking?

Q. Sure.

A. Okay. I haven't really thought about that. No, I can't -- I can't say I disagree or agree.

Q. Okay.

A. I feel like that's speculation.

Q. Okay. Well, in the seconds that you were sneezing and your eyes were closed, is it possible that you went over the fog line and just didn't realize it?

A. I would say that's speculation and there's always the possibility.

[DE 88, Page ID# 59–60].  Thus, the question facing the Court is whether Spencer's muddled and waffling testimony is sufficient to create a genuine issue of material fact as to whether he crossed the fog line.

In summary judgment practice, it is important to remember that although the Court must construe the facts and all reasonable inferences in the non-movant's favor, the ultimate burden of raising a genuine issue of material fact also lies with the nonmoving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "With regard to cross-motions for summary judgment, each party has the equal burden of showing the absence of a genuine issue of material fact."  *Jordan v. City of Bucyrus*, 754 F. Supp. 554, 555–56 (N.D. Ohio 1991).  Ganshirt argues that Spencer creates no such factual dispute, citing *Wysong v. City of Heath*, 260 F. App'x 848, 856 (6th Cir. 2008), in support of the contention that a "plaintiff cannot defeat summary judgment merely by professing lack of memory in response to otherwise uncontroverted testimony." [DE 93, Page ID# 711].  Specifically, Ganshirt explains that Spencer does not affirmatively deny crossing the fog line—instead claiming that he cannot remember— while Ganshirt's "firsthand observation remains unrebutted."  [DE 93, Page ID# 711].

The *Wysong* holding is grounded in the idea that, even when viewing the facts in the light most favorable to the non-movant, the Court is "not obligated to treat a naked assertion in a litigation document as establishing a 'fact' when he admits to

having neither personal knowledge nor other evidence to support his claim." *Wysong*, 260 F. App'x at 857. For context, the plaintiff in *Wysong* was suffering a hypoglycemic attack and later admitted in his deposition that he did not remember what happened and did not deny that he fought with the officers. Here, Spencer begins by admitting that he does not fully recall whether he crossed the fog line but continues to waver and speculate as to that fact.

Under Rule 56, the non-movant must set out specific facts showing a genuine issue for trial. *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1354 (6th Cir. 1989); *see* FED. R. CIV. P. 56(e). Regardless of whether the facts are presented in an affidavit or derived from deposition testimony, they must rely upon the affiant or deponent's personal knowledge. *Id.*; *Wysong*, 260 F. App'x at 857. Likewise, these facts must be more than "mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (quoting *Godfrey v. Pulitzer Publishing Co.*, 276 F.3d 405, 412 (8th Cir. 2002)). In other words, a party cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).

Spencer conflates this rule, contending that Ganshirt improperly "attempts to satisfy his summary-judgment burden by pointing to Plaintiff's uncertainty and lack of recollection, rather than by producing affirmative evidence of statutory violation." [DE 92, Page ID# 682]. But Ganshirt does not rely on Spencer's uncertainty; he relies on his own firsthand observations, memorialized in the Uniform Citation and sworn

Page **11** of **19**

discovery responses, that Spencer crossed the fog line on two occasions. That is sufficient affirmative evidence.

Further, because Spencer's testimony is non-committal—consisting of his inability to recall whether he crossed the fog line and speculation that it was possible that he did—it is insufficient to raise a genuine issue of material fact. *See Smith v. LVNV Funding, LLC*, No. 2:11-CV-356, 2014 WL 4441195, at *1 n.1 (E.D. Tenn. Sept. 9, 2014) (noting that "testimony that the plaintiff does not remember" whether an event took place "does not amount to [a] sufficient denial[ ] to create a genuine issue of material fact"). At most, Spencer's deposition creates some vague doubt as to whether he crossed the fog line. But some doubt is wholly insufficient to stave off summary judgment. *See Matsushita*, 45 U.S. at 586. Especially in the face of admissible and uncontroverted personal observations from Officer Ganshirt. As the Sixth Circuit put it, Spencer "cannot beat something with nothing." *Wysong*, 260 F. App'x at 858. Thus, the Court holds that there is no material issue of fact as to whether Spencer crossed the fog line: he did.

Taking another bite of the apple, Spencer argues that crossing the fog-line does not equate to probable cause under Kentucky Revised Statute (KRS) § 189.290. [DE 92, Page ID# 679]. Specifically, Spencer argues that KRS § 189.290 requires the identification of "public-risk elements and/or willful injury to the highway." [DE 92, Page ID# 680]. But Spencer fails to cite any authority that requires the specific presence of an identifiable safety risk to pedestrians or willful operation causing injury to the highway to stop and cite an individual for violation of that statute. In

essence, Spencer misreads KRS § 189.290, inputting statutory elements where they do not otherwise exist.

Multiple courts in this Circuit and Commonwealth have held that "repeated crossing of the fog line into the shoulder of the road constitutes careless driving in violation of Kentucky law and provides probable cause to conduct a traffic stop." *United States v. Smith*, No. 18-CR-46-DLB, 2019 WL 1756279, at *3 (E.D. Ky. April 19, 2019), *aff'd*, No. 19-6448, 2020 WL 7587556 (6th Cir. Sept. 2, 2020); *United States v. Copley*, No. 4:16-cr-10-JHM, 2016 WL 3964070, at *2 (W.D. Ky. July 19, 2016) (holding police had probable cause to stop a motorist for violating KRS § 189.290 after he crossed the fog line twice over the course of three miles); *Baker v. Commonwealth*, 475 S.W.3d 633, 636 (Ky. Ct. App. 2015) (explaining that just hugging the fog line constitutes sufficient evidence to justify a traffic stop).[2] In fact, the *Copley* court addressed Spencer's same statutory argument, stating that KRS § 189.290 "does not require an operator to actually inconvenience or harm a pedestrian or other vehicle for a violation of the reckless driving statute to occur," repeatedly crossing the fog line demonstrates that "the driver of the vehicle is not operating a vehicle in a careful manner with regard to the safety of other vehicles on the highway." *Copley*, 2016 WL 3964070 at *2. In sum, crossing the fog line for several seconds on two occasions

---

[2] Spencer argues that reliance on suppression cases is misplaced in this civil context. [DE 92, Page ID# 680–81]. He seems to mainly take issue with the fact that these cases do not address the statutory elements that he claims exist in KRS § 189.290. As addressed *infra*, at least one of these cases (*Copley*) directly addresses Spencer's concerns. Furthermore, it is a well-established principle that holdings in suppression cases can be used in the civil context. *See Balsa U.S.A., Inc. v. Austin*, 60 F. Supp. 2d 723, 727 (W.D. Mich. 1999) (addressing the application of the holding in *Franks v. Delaware*, 438 U.S. 154 (1978), which originated in the criminal suppression context, to a § 1983 case).

within several minutes is sufficient to provide probable cause for a traffic stop under KRS § 189.290.

In the end, Ganshirt had probable cause to believe that a traffic violation had occurred, and therefore the initial stop, and later citation, of Spencer did not violate the Fourth Amendment.  The Court finds that there is no genuine issue of material fact as to whether Ganshirt had probable cause to stop and cite Spencer.  On the undisputed facts, Spencer's conduct in crossing the fog line provided an objective basis to conclude that he was operating his vehicle in a careless manner.  Because no reasonable juror could conclude that Ganshirt lacked probable cause, Spencer cannot establish a violation of his Fourth Amendment right to be free from unreasonable seizure. Ganshirt is therefore entitled to summary judgment on the Fourth Amendment claim.

**B.   FIRST AMENDMENT**

In large part, Spencer claims that he was arrested in retaliation for his protected speech.  Typically, a claim of First Amendment retaliation requires proof of three elements: "'(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct: and (3) there is a causal connection between' the first two elements, *i.e.*, 'the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *Hartman v. Thompson*, 931 F.3d 471, 483–84 (6th Cir. 2019) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). In recent years, however, the law in this area has evolved.

In 2006, the Supreme Court of the United States held that, when bringing a criminal prosecution retaliation claim, a plaintiff must also show a lack of probable cause for the prosecution. *See Hartman v. Moore*, 547 U.S. 250, 265–66 (2006). Then, in 2019, the Supreme Court extended that holding to include retaliatory arrest claims. *See Nieves v. Bartlett*, 587 U.S. 391, 404 (2019). Specifically, the Court held that, with limited exception,[3] to succeed on a retaliatory arrest claim, a plaintiff must prove the absence of probable cause for the arrest. *See id.* Thus, the First Amendment is not violated by an arrest in retaliation for protected conduct, so long as there is probable cause for the arrest:

> [W]hen reviewing an arrest, we ask "whether the circumstances, viewed objectively, justify [the challenged] action," and if so, conclude "that action was reasonable *whatever* the subjective intent motivating the relevant officials." A particular officer's state of mind is simply "irrelevant," and provides no "basis for invalidating an arrest."

*Id.* at 403 (citations omitted).

Neither the Supreme Court nor the Sixth Circuit have addressed the extension of the *Nieves* holding to the traffic stop context. *Cf. Novak v. City of Parma*, 932 F.3d 421, 431 (6th Cir. 2019) (discussing the future application of the *Nieves* holding, distinguishing between retaliation cases where both protected and unprotected conduct served as the basis for probable cause and cases where probable cause was solely based on protected conduct, and indicating a possible exception to the general

---

[3] The narrow exception, colloquially known as the "jaywalking exception," applies only where "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *See Nieves*, 587 U.S. at 407. Upon making such a showing, a "plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause." *See id.* at 407–08.

rule of *Nieves* where the latter scenario is implicated).   However, there seems to be no reason to distinguish between a traffic stop, such as the one conducted by Ganshirt, and arrests when applying the *Nieves* rule.  Nor has Spencer pointed to any post-*Nieves* case law sufficient to establish that an extension of the *Nieves* holding is inconsistent with the applicable constitutional principles.   Indeed, Sixth Circuit courts consistently follow a similar objective test when evaluating the reasonableness of a traffic stop, completely foregoing an analysis of the subjective beliefs of the acting officer.  *See United States v. Redmond*, No. 08-CR-105-GFVT, 2009 WL 1505541, at *10 (E.D. Ky. May 28, 2009) (quoting *United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003)).  Moreover, while Spencer was not arrested, the citation and the alleged seizure following the citation both involve probable cause; therefore, the logical conclusion is that the absence of probable cause must be similarly dispositive in determining if Ganshirt's animus caused the potentially chilling action.

Ganshirt does not dispute that Spencer engaged in protected activity when he gave him the middle finger.  [DE 93, Page ID# 710]; *see Cruise-Gulyas v. Minard*, 918 F.3d 494 (6th Cir. 2019).  But he does argue that the *Nieves* ruling requires that Spencer's retaliation claim be defeated.  Furthermore, Ganshirt correctly identifies that, like the instant matter, *Nieves* also involved specific evidence of possible retaliatory animus.  Yet the *Nieves* court still established that even such evidence cannot overcome a showing of probable cause.  *See Nieves*, 587 U.S. at 397, 408 (noting that although the officer in question stated, "bet you wish you would have talked to me now" after arresting the plaintiff, the claims against the officer still could not

succeed because they had probable cause to arrest the plaintiff).  Accordingly, unless Spencer successfully demonstrates an absence of probable cause, Ganshirt's statement of "if you don't want to draw attention to yourself, don't flick me off" cannot be the proverbial nail in the coffin, as Spencer suggests.

Now, this Court turns to the threshold question: did Ganshirt have probable cause to conduct a traffic stop of Spencer and his vehicle?  As previously explained, he certainly did.  Spencer crossed the fog line at least twice in the time leading up to the traffic stop—an established violation of KRS § 189.290.  Therefore, the evidence shows probable cause to stop Spencer, which, in turn, negates a First Amendment retaliation claim.  And Spencer did not present any evidence or make any argument that he is entitled to the protection of the "jaywalking exception" to the *Nieves* rule.

Spencer briefly argues that Ganshirt claims he considered whether Spencer was under the influence of drugs or alcohol during the stop, did not conduct field sobriety tests, issue a DUI citation, or document typical impairment indicators, and now improperly attempts to use this theory as a post-hoc rationalization for the stop. [DE 92, Page ID# 684].  This is not a fair evaluation of the facts.  Ganshirt did state that he thought the presence of drugs or alcohol may be at issue; however, he did not observe symptoms of impairment or open containers in the car and was unable to secure a K-9 unit without properly extending the stop. Ganshirt's decision not to pursue a DUI charge therefore reflects an absence of supporting evidence, not a post hoc rationalization.  Moreover, Ganshirt had already established probable cause for the stop and citation with the fog line contact.  Thus, Spencer's argument on this

issue is a moot point. Because no reasonable jury could find in Spencer's favor on his First Amendment retaliation claim, Ganshirt is entitled to summary judgment on that claim.

In short, this Court recommends that Ganshirt is entitled to summary judgment as to all of Spencer's claims against him. Because of that, it is not necessary for the Court to probe Ganshirt's claims of qualified immunity.[4]

## IV.   CONCLUSION

For the reasons discussed in this opinion, the Court **RECOMMENDS** that the District Court **DENY** Spencer's Motion for Summary Judgment [DE 85] and **GRANT** Ganshirt's Motion for Summary Judgment [DE 86]. The undersigned enters this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and FED. R. CIV. P. 72(b). Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, either party may submit written objections for *de novo* determination by the District Judge.

Signed this the 29th of April, 2026.

---

[4] Notably, Spencer filed an eight-page memorandum of law an exhibit to his Combined Response and Reply. [DE 92-1]. In relevant part, Spencer's filing at DE 92 and the memorandum argue that the doctrine of qualified immunity derives from a scrivener's error and represents an improper application of § 1983, which should not be applied in this case. [DE 92, Page ID# 686; DE 92-1 (citing Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201 (2023))]. Because the Court does not reach Ganshirt's claims of qualified immunity, it need not address Spencer's arguments regarding the impropriety of the doctrine as a whole.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY