**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 24-144-DLB-MAS**

**JEREMY SPENCER**                                                                     **PLAINTIFF**

**v.**                                    **MEMORANDUM ORDER**
                          **ADOPTING REPORT AND RECOMMENDATION**

**JACOB GANSHIRT**                                                                    **DEFENDANT**

* * * * * * * * * * * * * *

This matter is before the Court upon the April 29, 2026 Report and Recommendation ("R&R") of United States Magistrate Judge Matthew A. Stinnett, wherein he recommends that the Court grant Defendant Jacob Ganshirt's Motion for Summary Judgment (Doc. # 86) and deny Plaintiff Jeremy Spencer's Motion for Summary Judgment (Doc. # 85). (Doc. # 96 at 1). Plaintiff has filed written Objections to the R&R (Doc. # 97), and Defendant has filed a Response (Doc. # 98). Therefore, the R&R is ripe for the Court's review. For the following reasons, Plaintiff's Objections are **overruled**, the R&R is **adopted**, Plaintiff's Motion for Summary Judgment (Doc. # 85) is **denied**, and Defendant's Motion for Summary Judgment (Doc. # 86) is **granted**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The Court incorporates the factual background as set forth in the R&R. (Doc. # 96 at 2-3). Nonetheless, the Court will provide a brief summary as necessary to evaluate Spencer's Objections.

On September 27, 2024, Jeremy Spencer, traveling north on Oakbrook Drive in Boone County, Kentucky, came to the four-way intersection at Limaburg Road. (Doc. #

1

96 at 2).  At the same time, Boone County Sheriff's Deputy Jacob Ganshirt, traveling south, brought his cruiser to a stop at the opposite side of the same intersection.  (*Id.*). Ganshirt states that he observed Spencer "pulling his body up over the steering wheel of his vehicle" and "aggressively banging his hand against the inner windshield displaying a middle finger" in Ganshirt's direction before he "screamed 'fuck you' several times."  (Doc. # 85-7 at 6).  At his deposition, Spencer agreed that he "lifted [his] left hand and extended his middle finger" toward Ganshirt.  (Doc. # 88 at 53:7-9).  This behavior led Ganshirt to suspect that Spencer may be under the influence of drugs or alcohol.  (Doc. # 85-6 at 4). Although Spencer proceeded northward past Ganshirt's cruiser, Ganshirt performed a U-turn to further observe Spencer's operation of his motor vehicle.  (Doc. # 85-7 at 6).

Ganshirt states that, as he drove behind Spencer's vehicle, he observed it "veer[] over the white right fog line into the shoulder of the roadway for a few seconds on two occasions[.]"  (Doc. # 86-1 at 1).  Spencer, however, testified that he doesn't recall whether he crossed over the white fog line and that he could only speculate as to whether he did or did not.  (Doc. # 88 at 58:14-15; 60:8-25).  Regardless, Ganshirt initiated a traffic stop.  (Doc. # 86-1).  Upon stopping, Ganshirt approached the driver's side window of Spencer's vehicle and informed Spencer that he had been pulled over because he crossed the white fog line.  (Doc. # 88 at 58:8-12).  Spencer responded that he was "probably sneezing."  (*Id.* at 58:16-19).  Ganshirt did not detect an odor of alcohol or notice any open containers in Spencer's car and Spencer was able to answer his questions cogently.  (Doc. # 85-3 at 5).  Although Ganshirt called for a K-9 narcotics detection unit, there was none in close proximity.  (*Id.*).  Not wanting to delay the stop any further, Ganshirt prepared a citation for careless driving in violation of KRS § 189.290 and

2

returned to Spencer's vehicle.  (*Id.*; Doc. # 86-1).  After handing Spencer the citation, Ganshirt said, "The only thing I would suggest is, if you don't want to draw attention to yourself, don't flick me off.  Have a good day." (Doc. # 89 at 09:50-09:58).  Ganshirt then returned to his cruiser and both parties left the scene of the stop.  (Doc. # 96 at 3).

Spencer filed his initial Complaint on September 12, 2024, bringing a claim under 42 U.S.C. § 1983 for violation of his First Amendment rights.  (Doc. # 1 at 3).  On April 2, 2025, Spencer filed his Amended Complaint, which added a claim under § 1983 for unlawful seizure in violation of the Fourth Amendment. (Doc. # 27 ¶¶ 56-61).  On January 5, 2026, Spencer filed a Motion for Summary Judgment on his two claims.  (Doc. # 85). On January 20, 2026, Ganshirt filed a combined Motion for Summary Judgment and Response to Spencer's Motion.  (Doc. # 86).  Spencer filed a combined Reply in support of his Motion and Response in opposition to Ganshirt's Motion.  (Doc. # 92).  On February 16, 2026, Ganshirt filed a Reply in support of his Motion.  (Doc. # 93).

Judge Stinnett issued his R&R on April 29, 2026, recommending that the Court grant Ganshirt's Motion for Summary Judgment and deny Spencer's Motion.  (Doc. # 96). On May 8, 2026, Spencer filed his Objections to the R&R (Doc. # 97) and, on May 21, 2026, Ganshirt filed a Response to these Objections (Doc. # 98).  Accordingly, this matter is ripe for the Court's review.

## II.    REPORT AND RECOMMENDATION

In his R&R, Judge Stinnett observed that Spencer brings two claims against Ganshirt under § 1983.  (Doc. # 96 at 5).  First, Spencer claims that Ganshirt violated his Fourth Amendment rights by pulling him over and citing him for careless driving even though Ganshirt lacked probable cause to do so.  (*Id.*).  Second, Spencer claims that

3

Ganshirt violated his First Amendment rights by conducting this unlawful stop in retaliation for Spencer's protected speech.  (*Id.*).

Judge Stinnett recommends that the Court grant summary judgment to Ganshirt on Spencer's Fourth Amendment claim.  (*Id.* at 14).  He began by noting that, with respect to a traffic stop like the one at issue in this case, the Fourth Amendment requires that an officer possess "either probable cause of a civil infraction or reasonable suspicion of criminal activity."  (*Id.* at 6 (quoting *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citation omitted))).  In such cases, Judge Stinnett continued, probable cause "exists where 'an officer observes a motorist violate a traffic law.'"  (*Id.* (quoting *United States v. Lott*, 954 F.3d 919, 923 (6th Cir. 2020) (citation omitted))).  And an officer's subjective intentions for initiating a traffic stop are irrelevant to the probable cause inquiry. (*Id.* (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citation omitted))).

Turning to the case at hand, Judge Stinnett rejected Spencer's argument that the Court cannot consider Ganshirt's recollection of Spencer's "bizarre" behavior at the intersection of Oakbrook and Limaburg.  (*Id.* at 7).  Spencer claimed that these recollections were "subjective and speculative," and constituted "impermissible lay opinion under FRE 701, and lack[ed] foundation under FRE 602."  (*Id.* (citing Doc. # 92 at 2)).  However, Judge Stinnett concluded that "Ganshirt's statements rely on firsthand observations and are precisely the perception-based testimony contemplated by the Federal Rules of Evidence."  (*Id.* (citations omitted)).  Accordingly, Judge Stinnett found that Ganshirt's characterization of Spencer's conduct is admissible.

Even setting this aside, however, Judge Stinnett concluded that Ganshirt had probable cause to initiate a traffic stop "based solely on his observation that Spencer

4

crossed the fog line on two occasions." (*Id.*).   Judge Stinnett reached this conclusion after weighing Ganshirt and Spencer's respective recollections of the minutes preceding the traffic stop.  "In both the citation and his answers to discovery, Ganshirt's recollection of the events remains consistent: He observed Spencer's vehicle veering over the right fog line into the shoulder of the roadway for a few seconds on two occasions[.]" (*Id.* at 8 (citing Docs. # 86-1; 85-6 at 4; 85-4 at 5)).   On the other hand, Judge Stinnett noted, "Spencer's testimony is somewhat ambiguous." (*Id.*).   During his deposition, Spencer initially stated that he did not recall whether he crossed the fog line or not. (*Id.*).   However, Spencer acknowledged that during the traffic stop, he told Ganshirt that he was probably sneezing, which suggested an acknowledgement that he might have crossed the fog line. (*Id.*).   Judge Stinnet characterized the "question facing the Court [as] whether Spencer's muddled and waffling testimony is sufficient to create a genuine issue of material fact as to whether he crossed the fog line." (*Id.* at 10).   Looking to the Sixth Circuit's decision in *Wysong v. City of Heath*, 260 F. App'x 848 (6th Cir. 2008), Judge Stinnett concluded that Spencer's lack of recollection meant that Ganshirt's firsthand observation that Spencer crossed the fog line remained unrebutted. (*Id.*).   Consequently, Judge Stinnett continued, "there is no material issue of fact as to whether Spencer crossed the fog line: he did." (*Id.* at 12).

Judge Stinnett also held that, after observing Spencer cross the fog line multiple times, Ganshirt had probable cause to believe that Spencer had violated KRS § 189.290. (*Id.*).   Spencer argued that he could not be guilty of careless driving unless Ganshirt could identify a specific safety risk or injury caused by Spencer's driving. (*Id.*).   But, Judge Stinnett observed, Spencer failed to identify any authority suggesting that such

5

identification is required by the statute.  (*Id.*).  On the contrary, Judge Stinnett pointed to applicable case law supporting the proposition that "repeated crossing of the fog line into the shoulder of the road constitutes careless driving in violation of Kentucky law and provides probable cause to conduct a traffic stop."  (*Id.* at 13 (quoting *United States v. Smith*, No. 18-CR-46-DLB, 2019 WL 1756279, at *3 (E.D. Ky. April 19, 2019), *aff'd*, No. 19-6448, 2020 WL 7587556 (6th Cir. Sept. 2, 2020)) (citations omitted)).  And Judge Stinnett cited one case which explicitly held that KRS § 189.290 "does not require an operator to actually inconvenience or harm a pedestrian or other vehicle for a violation of the reckless driving statute to occur" and that repeatedly crossing the fog line supplied probable cause to conduct a traffic stop.  (*Id.* (quoting *United States v. Copley*, No. 4:16-cr-10-JHM, 2016 WL 3964070, at *2 (W.D. Ky. July 19, 2016))).  Because repeatedly crossing the fog line violates KRS 189.290 and because Spencer did not challenge Ganshirt's statement that he observed Spencer cross the fog line on two occasions, Judge Stinnett held that Ganshirt had probable cause to initiate the traffic stop.  (*Id.* at 14).  As a result, Judge Stinnett recommends that Ganshirt is entitled to summary judgment on Spencer's Fourth Amendment claim.  (*Id.*).

Next, Judge Stinnett found that Ganshirt was entitled to summary judgment on Spencer's First Amendment claim as well.  (*Id.* at 18).  Judge Stinnett first noted that, generally speaking, a claim of First Amendment retaliation requires a showing that: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the first two elements."  (*Id.* at 14 (quoting *Hartman v. Thompson*, 931 F.3d 471, 483-84 (6th Cir. 2019) (quoting *Thaddeus-*

6

*X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)))).  However, Judge Stinnett observed that, in recent years, "the law in this area has evolved." (*Id.*).  Most notably, Judge Stinnett identified the Supreme Court's decision in *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019).  (*Id.* at 15).  In *Nieves*, the Supreme Court held the existence of probable cause defeats a claim of retaliatory arrest in violation of the First Amendment.[1]  (*Id.*).  However, *Nieves* involved a claim of retaliatory arrest, whereas Spencer claims that Ganshirt unlawfully stopped him and issued a citation. (*Id.*).  But "[n]either the Supreme Court nor the Sixth Circuit have addressed the extension of the *Nieves* holding to the traffic stop context." (*Id.* (citation omitted)).  Nevertheless, Judge Stinnett concluded that the no-probable-cause requirement identified in *Nieves* should apply with equal force in the context of a traffic stop.  (*Id.* at 16).  Thus, Judge Stinnett continued, the fact that Ganshirt told Spencer, "If you don't want to draw attention to yourself, don't flick me off" is irrelevant, provided that Ganshirt had probable cause to conduct the traffic stop and issue the citation. (*Id.* at 17).  Having already determined that Ganshirt had probable cause, Judge Stinnett found that Spencer's First Amendment retaliation claim must fail. (*Id.*).

Because Ganshirt had probable cause to believe that Spencer had violated KRS 189.290 at the time of the traffic stop, Judge Stinnett recommended that the Court deny Spencer's Motion for Summary Judgment (Doc. # 85) and grant Ganshirt's cross-Motion for Summary Judgment (Doc. # 86).

---

[1]      Judge Stinnett also acknowledged that the *Nieves* court carved out a narrow exception for situations where "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." (*Id.* at 15 n. 3 (quoting *Nieves*, 587 U.S. at 407)).

III.    ANALYSIS

A.    **Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion."   Under Federal Rule of Civil Procedure 72, following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations."   The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation."   Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).   Failure to object is considered a waiver of the party's right to review. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

The purpose of objections is to allow "the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."   *Id*. at 147. Therefore, objections to the R&R must be specific—they may not be "vague, general, or conclusory . . . [as such objections are] tantamount to a complete failure to object." *Fields v. Lapeer 71-A District Court Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001).   "Moreover, an objection that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *United States v. Vanover*, No. 2:10-cr-14, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)) (internal quotation marks omitted).

### B.    Spencer's Objections

Although Spencer's Objections (Doc. # 97) are not a model of clarity, the Court construes them to take issue with four separate aspects of the R&R.[2]  The Court will address these objections *seriatim*.

### 1.    *Improper Weighing of Evidence*

Spencer objects that Judge Stinnett erred in finding that Ganshirt's statements about Spencer's driving were "unrebutted."  (Doc. # 97 at 2).  Spencer claims that he "did not concede a fog-line violation; he stated he did not believe it occurred and characterized contrary suggestions as speculation."  (*Id.* (emphasis in original)).  And, he argues, mere "lack of recollection is not affirmative evidence establishing probable cause as a matter of law."  (*Id.* at 4).  Nevertheless, Spencer claims that the R&R erroneously treated Spencer's uncertainty as to whether he crossed the fog line as further support of Ganshirt's recollection.  (*Id.*).

The R&R did not count Spencer's lack of recollection as evidence that he crossed the fog line.  Nor did it treat Spencer's uncertainty as affirmative evidence that he *did not* cross the fog line.  Instead, Judge Stinnett properly treated Spencer's lack of recollection as an absence of evidence on the point.  (*See* Doc. # 96 at 10).  Because Spencer cannot recall whether he did or did not cross the fog line—indeed, he repeatedly testified that he could only speculate as to his actions—Ganshirt's account goes unrebutted.  *See*

---

[2]    Spencer also objects to the R&R's "mischaracterization of the action."  (Doc. # 97 at 2). Specifically, he observes that "[t]he R&R incorrectly labels this as a 'prisoner civil rights action.'" (*Id.*).  Indeed, the first sentence of the R&R erroneously describes this case as a "prisoner civil rights action."  (Doc. # 96 at 1).  Spencer argues that "[t]his reflects imprecision and an improper analytical lens."  (Doc. # 97 at 2).  However, Spencer fails to identify a specific manner in which this isolated mischaracterization impacted Judge Stinnett's analysis.  As a result, this objection does not rise to the level of specificity required by the Federal Rules of Civil Procedure.  *See Fields*, 2 F. App'x at 482-83.

*Wysong*, 260 F. App'x at 857 (holding that where a party "has no memory of the events . . . his testimony cannot be a factor.") (quoting *Woods v. Jefferson Cnty. Fiscal Court*, No. 3-01CV-210-H, 2003 WL 145213, at *5 (W.D. Ky. Jan. 8, 2003)).  As Spencer himself acknowledges, "uncertainty is not an admission, speculation is not proof[.]"  (Doc. # 97 at 3).  Thus, Spencer's uncertainty and speculation as to whether he crossed the fog line are not proof at all.  Accordingly, his testimony cannot rebut Ganshirt's affirmative recollection, which has remained consistent.  Spencer's first objection is **overruled**.

### 2.     Lack of Probable Cause

Spencer's next objection claims that "[t]he R&R replaces element-based analysis with a per se fog-line rule, which the statute does not provide."  (Doc. # 97 at 5).  Specifically, Spencer argues that Ganshirt lacked probable cause to issue a citation for a violation of KRS 189.290 unless he could identify specific "vehicles/people affected or placed at risk" by Spencer's driving.  (*Id.*).  Because "the record identifies no vehicles, no proximity, and no articulated risk," Spencer concludes that Ganshirt lacked probable cause to initiate the traffic stop and issue the citation.  (*Id.*).

Judge Stinnett rejected this exact argument in the R&R.  (Doc. # 96 at 13).  Spencer's objection merely seeks a second bite at the apple, and it may be overruled on that basis.  *VanDiver*, 304 F. Supp. 2d at 938.  Even so, this objection fails on its substance as well.  Spencer asserts that the R&R erred in its reliance on *United States v. Copley* because that case "does not eliminate the statutory requirement that operation be careless with regard to the safety of other vehicles." (Doc. # 97 at 5).  Certainly, *Copley* did not dispense with KRS 189.290's requirement that a driver operate his vehicle "in a careful manner, with regard for the safety and convenience of pedestrians and other

10

vehicles upon the highway." 2016 WL 3964070, at *2 (quoting KRS 189.290(1)). However, the *Copley* court held that "[w]hen a driver travels across the fog line and onto the rumble strip repeatedly, the driver of the vehicle is not operating the vehicle in a careful manner with regard to the safety of other vehicles on the highway." *Id.* And it explicitly held that violation of the statute "does not require [that] an operator [] *actually inconvenience or harm a pedestrian or other vehicle*[.]" *Id.* (emphasis added). Rather, a driver's repeated failure to maintain his lane—in and of itself—demonstrates a lack of regard for the safety and convenience of other vehicles on the highway. *Id.*; *see also Smith*, 2019 WL 1756279, at *3 (crossing over the fog line numerous times within a few miles supplied probable cause for a traffic stop). Once again, Spencer cites no authority for his proposition that "[i]n the absence of any identifiable safety concern," probable cause for a violation of KRS 189.290 cannot arise. (Doc. # 97 at 5).

Spencer also argues that "[t]he R&R improperly treats the existence of probable cause as dispositive of [his] Fourth Amendment claim." (*Id.* at 6). However, it is well-settled that "[a] police officer may stop a motorist when he possesses probable cause of a civil infraction or has reasonable suspicion of criminal activity." *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (citing *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012)). Thus, Spencer's § 1983 claim for unlawful seizure rises or, in his case, falls with the existence of probable cause. Spencer also claims that the R&R errs by failing "to identify the precise moment at which probable cause allegedly arose." (Doc. # 97 at 7). But Judge Stinnett clearly noted that "Ganshirt had probable cause to initiate the traffic stop based solely on his observation that Spencer crossed the fog line on two

11

occasions." (Doc. # 96 at 7). Probable cause arose, then, when Ganshirt observed Spencer repeatedly cross the fog line.

Finally, Spencer claims that he cited "binding authority holding that minimal lane deviation, without additional indicators of unsafe or impaired driving, does not establish reasonable suspicion or probable cause[.]" (*Id.* at 10). And he objects that the R&R failed to apply this controlling precedent. (*Id.*). Spencer specifically identifies *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000), *United States v. Gross*, 550 F.3d 578 (6th Cir. 2008), and *United States v. Warfield*, 727 F. App'x 182 (6th Cir. 2018) as cases which "directly govern whether brief or minor contact with a lane line, absent additional facts," can supply probable cause for a traffic stop. (*Id.*).

However, these cases are not as authoritative as Spencer claims. Whether an officer has probable cause to make an arrest or, in this case, initiate a traffic stop and issue a citation implicates state law. *Scheffler v. Lee*, 752 F. App'x 239, 244 (6th Cir. 2018). Because the state law at issue here is KRS 189.290, the Court must look to precedent applying that statute. None of the cases Spencer cites apply KRS 189.290 or Kentucky law. *See Freeman*, 209 F.3d at 466 (applying a Tennessee statute); *Gross*, 550 F.3d at 583 (same); *Warfield*, 727 F. App'x at 186 (applying an Ohio statute). The Ohio and Tennessee statutes at issue in these cases employ markedly different language to KRS 189.290. *Compare* Tenn. Code Ann. § 55-8-123(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane, and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety[.]") *and* ORC § 5411.33 ("A vehicle . . . shall be driven, as nearly as is practicable, entirely within a single lane of traffic and shall not be moved from such lane or line until the driver has

12

first ascertained that such movement can be made with safety."), *with* KRS 189.290 ("The operator of any vehicle upon a highway shall operate the vehicle in a careful manner, with regard for the safety and convenience of pedestrians and other vehicles upon the highway.").

Furthermore, none of the cases cited by Spencer involve the repeated crossing of a fog line in short succession. *See Freeman*, 209 F.3d at 466 (one isolated incident of a motor home partially weaving into the emergency lane for a few feet); *Gross*, 550 F.3d at 583 (a slow lane change); *Warfield*, 727 F. App'x at 186 (touching, but not crossing, the lane line). By contrast, the R&R identifies several cases from courts applying KRS 189.290. (*See* Doc. # 96 at 13 (citing *Smith*, 2019 WL 1756279, at *3; *Copley*, 2016 WL 3964070, at *2)). These cases support Judge Stinnett's conclusion that "repeated crossing of the fog line into the shoulder of the road" violates KRS 189.290. (*Id.* (quoting *Smith*, 2019 WL 1756279, at *3)). Consequently, the R&R did not err by failing to "explain[] why the lane-deviation authority cited by Plaintiff does not govern here." (Doc. # 97 at 11).

### 3.   *Lack of Reasonable Suspicion*

Spencer also argues that, even if probable cause existed to pull him over for violating KRS 189.290, the Court must first determine "whether [Ganshirt] had reasonable suspicion before initiating the U-turn and pursuit." (Doc. # 97 at 6). In making this claim, Spencer fixates on Ganshirt's initial belief that Spencer may have been intoxicated. (*See id.* at 8-9). Spencer argues that if Ganshirt lacked "specific, articulable facts" sufficient to create a reasonable suspicion that Spencer was impaired, "the U-turn/pursuit was unlawful[.]" (*Id.* at 10). Because the R&R failed to find that Ganshirt had reasonable

suspicion that Spencer was impaired prior to initiating his pursuit, Spencer objects. (Doc. # 97 at 9).

But Spencer cites no authority for his claim that an officer needs reasonable suspicion to follow and observe a vehicle on a public road. Although the Court's own research has not identified any controlling authority on the subject, courts in other circuits have found that a police officer does not need reasonable suspicion to follow a vehicle on public roads. *See, e.g.*, *United States v. Marquez-Diaz*, 325 F. App'x 637, 642 (10th Cir. 2009) ("Marquez-Diaz does not cite to, nor has our research revealed, a constitutional requirement that law enforcement officers must have a reasonable suspicion before following a vehicle on a public roadway, even if they do so hoping to discover a violation justifying a stop."). The Fourth Amendment protects individuals from unreasonable searches and seizures. By changing course to further observe Spencer's driving, Ganshirt neither searched nor seized him. Consequently, Ganshirt did not need a reasonable suspicion of criminal activity to follow Spencer on a public road.

As a result, the reason for Ganshirt's U-turn is *wholly irrelevant* to the lawfulness of the traffic stop. Spencer has not identified any basis for his claim that Ganshirt needed a reasonable suspicion of criminal activity before legally turning his cruiser around to follow Spencer down a public road. And hornbook law provides that "an officer may stop and detain a motorist so long as the officer has probable cause to believe that the motorist has violated a traffic law." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). Ganshirt states that he observed Spencer cross the right fog line on two occasions before initiating the traffic stop. (Doc. # 86-1). Spencer does not affirmatively dispute this claim, and he does not recall whether he crossed the fog line or not. (Doc. # 88 at 58:14-15 (Q:

14

"Did you go over the white fog line?" A: "I don't recall.")).  Because Ganshirt observed Spencer violate KRS 189.290, a reasonable jury could only find that Ganshirt had probable cause to initiate the traffic stop.  That Ganshirt may have also suspected that Spencer was intoxicated has no bearing on this conclusion.

### 4.   *Application of the* Nieves *Exception*

Spencer's Objections also seek—for the first time—to invoke the narrow exception to the no-probable-cause requirement for claims of First Amendment retaliation.  (Doc. # 97 at 8).  Although Spencer has not previously argued that this exception applies to his claim, he objects that the R&R erred by failing to independently raise the issue.  (Doc. # 97 at 8).  Indeed, in *Nieves v. Bartlett*, the Supreme Court established a "narrow qualification" to the probable cause requirement which allows claims of First Amendment retaliation to proceed—probable cause notwithstanding—if the plaintiff "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  587 U.S. at 407 (citation omitted).  Spencer's Objections claim that his case falls within *Nieves*'s narrow exception.  (Doc. # 97 at 8).

Because Spencer has never raised this argument before, Judge Stinnett was under no obligation to consider it.  *See Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (holding that while courts must construe a *pro se* plaintiff's filings liberally, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf") (citation omitted).  At any rate, Judge Stinnett *did* acknowledge the *Nieves* exception and found it inapplicable.  (Doc. # 96 at 17 (finding that "Spencer did not present any evidence or make any argument that he is entitled to the protection of the 'jaywalking exception' to the

15

*Nieves* rule")). Spencer has failed to present objective evidence—statistics, similarly situated comparators, or some other kind of evidence—as required under *Nieves*. *See Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024). Accordingly, his untimely argument that the *Nieves* exception applies must be rejected.

## IV.   CONCLUSION

For the reasons stated herein, Spencer has failed to raise any meritorious legal objections to the R&R. Accordingly,

**IT IS ORDERED** as follows:

(1)   The Magistrate Judge's Report and Recommendation (Doc. # 96) is **ADOPTED** as the **Opinion of the Court**;

(2)   Plaintiff's Objections (Doc. # 97) to the Report and Recommendation are **OVERRULED**;

(3)   Plaintiff's Motion for Summary Judgment (Doc. # 85) is **DENIED** for the reasons stated in the Report and Recommendation;

(4)   Defendant's Motion for Summary Judgment (Doc. # 86) is **GRANTED** for the reasons stated in the Report and Recommendation;

(5)   This civil action is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket; and

(6)   The Court will enter a corresponding Judgment in favor of Defendant Ganshirt with this Order.

This 19th day of June, 2026.



Signed By:

_David L. Bunning_

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2024\24-144 MOO re MSJ R&R.docx