**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

**APPEAL No.**

**JEREMY SPENCER,**

Plaintiff-Appellant,

v.

**JACOB GANSHIRT,**

Defendant-Appellee.

Eastern District of Kentucky
FILED
SEP 29 2026
AT COVINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**On Appeal from the United States District Court**

for the Eastern District of Kentucky, Northern Division at Covington

**Civil Action No**. 2:24-cv-00144-DLB-MAS

Hon. David L. Bunning, Chief United States District Judge

# BRIEF OF PLAINTIFF-APPELLANT JEREMY SPENCER

## CORPORATE DISCLOSURE STATEMENT

**Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, Plaintiff-Appellant Jeremy Spencer states that he is a natural man proceeding in propria persona. To the best of his knowledge, he has no parent corporation overloads that are related to this case in anyway. To the best of his knowledge, No publicly owned corporation or its affiliate has a financial interest in the outcome of this appeal.**

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................... 6
JURISDICTIONAL STATEMENT .................................... 7
STATEMENT OF ISSUES PRESENTED .................................... 8
STATEMENT OF THE CASE .................................... 10
STATEMENT OF FACTS .................................... 13
SUMMARY OF THE ARGUMENT .................................... 18
ARGUMENT .................................... 22
I. The district court improperly resolved a material historical fact at summary judgment and misapplied *Wysong*. .................................... 23
II. The court converted fact-specific fog-line decisions into an undefined numerical rule not contained in KRS § 189.290. .................................... 28
III. The Fourth Amendment claim could not be resolved against Spencer on the disputed record. .................................... 35
IV. The First Amendment retaliation claim presents a jury question when the record is viewed in Spencer's favor. .................................... 37
V. The district court should not have extended *Nieves* from retaliatory arrests to this traffic stop and citation as though that extension were settled law. .............. 40
VI. Reliance on the incomplete Rule 30(e) deposition record compounded the Rule 56 error. .................................... 42
VII. Qualified immunity does not independently sustain the judgment on the facts that must be assumed for Spencer. .................................... 44
VIII. The post-judgment proceedings preserved the same errors and did not cure them. .................................... 46
CONCLUSION .................................... 48
CERTIFICATE OF COMPLIANCE .................................... 49
CERTIFICATE OF SERVICE .................................... 50
ADDENDUM - DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .................................... 51

# TABLE OF AUTHORITIES

## Cases

*A.H. v. Louisville Metro Gov't, 612 S.W.3d 902 (Ky. 2020) .... 29*
*Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .... 11, 18, 22, 25*
*Baker v. Commonwealth, 475 S.W.3d 633 (Ky. Ct. App. 2015) .... 32-33*
*Beck v. Ohio, 379 U.S. 89 (1964) .... 35*
*Boyd v. United States, 116 U.S. 616 (1886) .... 34*
*Cruise-Gulyas v. Minard, 918 F.3d 494 (6th Cir. 2019) .... 37, 39, 46*
*Gambrel v. Knox County, 25 F.4th 391 (6th Cir. 2022) .... 18, 25, 27*
*Gonzalez v. Trevino, 602 U.S. 653 (2024) .... 40, 42*
Heien v. North Carolina, 574 U.S. 54 (2014) .... 29-30, 35
*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) .... 39*
*Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997) .... 37, 39*
*Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999) (en banc) .... 39*
*Grady v. Cratsenburg, 170 F.4th 995 (6th Cir. 2026) .... 20, 41*
*Nieves v. Bartlett, 587 U.S. 391 (2019) .... 6, 9, 20, 40-42*
*Scott v. Harris, 550 U.S. 372 (2007) .... 27, 44*
*Shawnee Telecom Res., Inc. v. Brown, 354 S.W.3d 542 (Ky. 2011) .... 29*
*Tolan v. Cotton, 572 U.S. 650 (2014) .... 11, 18, 22, 44*
*Trout v. FirstEnergy Generation Corp., 339 F. App'x 560 (6th Cir. 2009) .... 43*
*United States v. Copley, No. 4:16-cr-10-JHM, 2016 WL 3964070 (W.D. Ky. July 19, 2016) .... 19, 31-32, 46*
*United States v. Ferguson, 8 F.3d 385 (6th Cir. 1993) (en banc) .... 35*
*United States v. Freeman, 209 F.3d 464 (6th Cir. 2000) .... 33-34*
*United States v. Gross, 550 F.3d 578 (6th Cir. 2008) .... 33-34*
*United States v. Smith, No. 19-6448, 2020 WL 7587556 (6th Cir. Sept. 2, 2020) .... 19, 32-33, 46*
*United States v. Warfield, 727 F. App'x 182 (6th Cir. 2018) .... 33-34*
*Whren v. United States, 517 U.S. 806 (1996) .... 35, 41*
*Wysong v. City of Heath, 260 F. App'x 848 (6th Cir. 2008) .... 8, 11-12, 18-19, 23, 26-27, 46*

## Statutes and Rules

28 U.S.C. § 1291 .... 7
28 U.S.C. § 1331 .... 7
28 U.S.C. § 1343 .... 7
42 U.S.C. § 1983 .... 7, 9-10, 45
Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13 .... 45
Ky. Rev. Stat. § 189.290 (2023) .... 6, 8, 17, 19-20, 28-29, 31-32, 34, 36
Ky. Const. § 2 .... 32

Fed. R. Civ. P. 30(e) .... 9, 11, 20, 42-44, 48
Fed. R. Civ. P. 56 .... 6, 8-9, 18, 20-22, 24-26, 33, 35, 42, 44-48
Fed. R. Civ. P. 59(e) .... 7, 9, 12, 22, 46-47
Fed. R. App. P. 4(a)(4) .... 7

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

2. Oral argument would materially assist the Court. This appeal presents a focused but consequential Rule 56 question: whether a district court may characterize a deponent's sworn statement, "I don't believe I went over the fog line," as no rebuttal at all and then declare that the disputed event occurred because the opposing witness said it did. The appeal also presents an important legal question expressly recognized below as unresolved by the Supreme Court and this Court: whether the arrest-specific probable-cause rule of *Nieves v. Bartlett* automatically extends to a routine traffic stop and citation. Finally, the appeal asks how nonbinding, fact-specific fog-line decisions should interact with KRS § 189.290's enacted safety-and-convenience language and this Court's totality-based Fourth Amendment precedent. These issues would benefit from oral clarification.

## JURISDICTIONAL STATEMENT

3. The district court had federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Spencer brought claims under 42 U.S.C. § 1983 alleging violations of the First and Fourth Amendments. The operative Amended Complaint asserted those two constitutional claims against Ganshirt. R. 27, PageID ## 103-108.

4. On June 19, 2026, the district court entered a Memorandum Order adopting the Report and Recommendation, granting Ganshirt's motion for summary judgment, denying Spencer's motion, dismissing the action with prejudice, and directing entry of judgment. R. 99, PageID ## 754-770. A corresponding final judgment was entered the same day. R. 100.

5. On July 10, 2026, Spencer timely filed a Rule 59(e) motion and a protective notice of appeal from the June 19 Memorandum Order, judgment, and adverse rulings merging into that judgment. R. 101; R. 102. Under Federal Rule of Appellate Procedure 4(a)(4)(B)(i), the notice became effective when the district court disposed of the timely Rule 59(e) motion on September 2, 2026. This Court has jurisdiction over the final decision under 28 U.S.C. § 1291. The appeal was docketed as No. 26-5617.

## STATEMENT OF ISSUES PRESENTED

6. a. Whether the district court violated Rule 56 by treating answers to hypothetical possibility questions as though they supported historical occurrence, discounting Spencer's sworn statement "I don't believe I went over the fog line," overlooking material inconsistencies in Ganshirt's own descriptions of the alleged lane movement, and declaring the disputed historical fact conclusively established.

**7. b.** Whether *Wysong v. City of Heath* was misapplied where Spencer did not suffer total memory loss of the relevant encounter, remembered the surrounding events, expressly testified "I don't believe I went over the fog line," and faced no video or disinterested witness conclusively corroborating Ganshirt's claim.

8. **c**. Whether the district court improperly converted fact-specific fog-line authorities into an undefined "repeated" or two-occurrence rule under KRS § 189.290, despite materially different case facts, Ganshirt's own "on or over" formulation, and the absence of any binding rule that merely being on or crossing a fog line automatically establishes careless driving or probable cause.

**9. d.** Whether Ganshirt was entitled to summary judgment on the Fourth Amendment claim when the factual predicate for probable cause was

genuinely disputed and the alleged lane movement did not, as a matter of law, automatically establish careless driving under the enacted statute.

**10. e.** Whether summary judgment on the First Amendment retaliation claim was improper where the protected middle-finger gesture preceded the U-turn and follow, no other specific traffic infraction had been observed before the alleged fog-line conduct, and Ganshirt later expressly linked Spencer's protected gesture to drawing police attention.

**11. f.** Whether the district court erred by extending *Nieves v. Bartlett*'s retaliatory-arrest probable-cause rule to a non-arrest traffic stop and citation after expressly acknowledging that neither the Supreme Court nor the Sixth Circuit had decided that extension.

**12. g.** Whether the court's reliance on the deposition as filed, despite Spencer's preserved Rule 30(e) objection that his timely signed errata and acknowledgment were omitted, compounded the Rule 56 error and warrants remand for consideration of the complete record.

13. h. Whether qualified immunity or the later Rule 59(e) proceedings independently sustain a judgment that rests on disputed facts and disputed legal premises, where Spencer also preserved a § 1983 Notwithstanding Clause objection to expanding immunity beyond binding precedent.

## STATEMENT OF THE CASE

### A. Nature of the action and claims

14. This is a § 1983 action arising from a September 27, 2023 traffic stop in northern Kentucky. Spencer alleged that Ganshirt stopped and cited him for careless driving without constitutionally sufficient grounds and in retaliation for protected expression. The Amended Complaint pleaded a First Amendment retaliation claim and a Fourth Amendment unreasonable-seizure claim. R. 27, PageID ## 103-108.

15. The central factual allegation supporting the stop was Ganshirt's assertion that, after turning around and following Spencer, he saw Spencer's vehicle cross the white right fog line into the shoulder for a few seconds on two occasions. R. 99, PageID # 755. The alleged pre-stop crossing itself was not captured on the body-camera video later filed with the court. The video begins with the stop and records the ensuing encounter, including Ganshirt's closing statement linking Spencer's earlier middle-finger gesture to drawing police attention. R. 89 at 09:50-09:58; R. 99, PageID # 756.

### B. Summary-judgment proceedings

16. After discovery, Spencer moved for summary judgment or partial summary judgment. R. 85. Ganshirt filed a combined response and cross-motion for summary judgment. R. 86. Spencer filed a combined reply and response opposing Ganshirt's motion, expressly disputing the fog-line premise, the statutory

interpretation, and the treatment of his deposition. R. 92, PageID # 679-687. Ganshirt replied. R. 93.

17. On April 29, 2026, Magistrate Judge Matthew A. Stinnett recommended granting Ganshirt's motion and denying Spencer's. R. 96, PageID # 717-735. The R&R reproduced the deposition sequence in which Spencer said both that a hypothetical crossing was "possible" and, when asked directly, "I don't believe I went over the fog line." R. 96, PageID # 725. Nevertheless, the R&R later characterized Spencer's testimony as noncommittal, treated Ganshirt's account as uncontroverted, and concluded: "there is no material issue of fact as to whether Spencer crossed the fog line: he did." R. 96, PageID # 728.

18. Spencer timely objected. His objections expressly invoked *Anderson* and *Tolan*, argued that he had not conceded the fog-line allegation, identified his sworn statement that he did not believe the crossing occurred, challenged the conversion of uncertainty into factfinding, distinguished *Wysong*, challenged the undefined use of "repeatedly," and identified the absence of video, measurements, witnesses, or identified hazard. R. 97, PageID ## 737-747. He also objected that the R&R had minimized his deposition-record concerns, including the absence of his signed acknowledgment and Rule 30(e) errata. R. 97, PageID # 738.

### C. Final judgment and post-judgment proceedings

19. On June 19, 2026, the district court overruled Spencer's objections, adopted the R&R, granted Ganshirt summary judgment, denied Spencer's motion,

and dismissed the action with prejudice. R. 99, PageID ## 754-770. The district court acknowledged that Spencer's objection said he "did not concede a fog-line violation; he stated he did not believe it occurred and characterized contrary suggestions as speculation." R. 99, PageID # 762. Yet it held that Spencer's testimony was an absence of evidence, so Ganshirt's account "goes unrebutted." Id. at PageID ## 762-763.

20. Spencer timely moved under Rule 59(e), again arguing that the court had treated disputed facts as established, converted lack of recollection into proof, overread fact-specific fog-line cases, and used the resulting probable-cause conclusion to dispose of the First Amendment claim. R. 101. The district court denied that motion on September 2, 2026. The post-judgment order reiterated that Ganshirt's account was the "only evidence on the point" and again applied *Wysong*. The merits of the June 19 judgment, however, remain subject to de novo appellate review.

## STATEMENT OF FACTS

### A. Protected expression preceded the follow and the alleged traffic conduct

21. On September 27, 2023, Spencer and Ganshirt approached the Oakbrook Drive/Limaburg Road intersection from opposite directions. Spencer extended his middle finger toward Ganshirt. The protected gesture occurred before the time at which Ganshirt later claimed to observe any fog-line movement. Defendant's own admissions confirm that sequence and further admit that, before the alleged fog-line event, he had not observed any other specific driving behavior that he considered a traffic infraction. R. 85-7; see R. 99, PageID # 755.

22. After observing the gesture, Ganshirt turned his cruiser around and positioned himself behind Spencer. His discovery responses admitted that he remained behind Spencer for more than one minute before initiating the traffic stop. In a supplemental answer concerning the sequence, he estimated the U-turn occurred roughly two to three minutes before the stop. R. 85-6, PageID # 484. He also admitted that during the interaction he observed no indicators such as slurred speech, odor of alcohol, or glassy eyes. R. 85-7. In his interrogatory narrative, Ganshirt said the gesture and behavior he considered unusual led him to suspect possible intoxication and to conduct the U-turn to observe Spencer further.

23. Spencer does not contend that the U-turn or ordinary following on a public road was itself a Fourth Amendment seizure. Its significance is evidentiary: it establishes chronology and bears on retaliatory motive and causation. **<u>The</u>**

**attention-producing event came first; the U-turn and follow came next; the alleged unrecorded fog-line conduct came later; then the stop and citation occurred; then Ganshirt told Spencer, "if you don't want to draw attention to yourself, don't flick me off**." R. 89 at 09:50-09:58; R. 99, PageID # 756.

B. The alleged fog-line crossing was disputed and unrecorded

24. Ganshirt claimed that while following Spencer he observed Spencer's vehicle veer across the right fog line into the shoulder for a few seconds on two occasions. R. 86-1; R. 99, PageID # 755. No dash-camera or body-camera recording presented below captures those alleged pre-stop lane movements. No disinterested witness testified that the crossings occurred.

**25. Ganshirt contradicted himself outright** in his own discovery descriptions of the central alleged conduct. When Spencer specifically asked him to state both the location of the first contact or crossing and "the number of times" he personally observed such crossings, Ganshirt supplied a location but no number. R. 85-4, PageID # 475. In the same discovery set, he said Spencer's vehicle was observed "several times driving on the fog line or over the fog line in the right-hand emergency lane." Id. Those formulations are materially different from a fixed account of "two occasions" of veering over the line into the shoulder, in which he stated on the citation.

26. The record does not present a single, objectively measured account of two established crossings. It contains "two occasions," "several times," and "on the fog

line or over the fog line." The distinctions matter because "on" a line is not the same historical fact as "over" the line into the shoulder, and because the legal analysis below treated the number and character of the movements as dispositive.

27. Asked whether he went over the white fog line, Spencer answered, "I don't recall." R. 88, PageID # 576. That answer should not be converted into an admission that a crossing occurred but Spencer later forgot it. In context, Spencer did not recall going over the fog line because he did not believe that event occurred. A witness cannot retrieve a discrete memory of an event he does not believe happened. When counsel later returned directly to the historical question, Spencer made the direction of his testimony explicit: "I don't believe I went over the fog line." R. 88, PageID # 578. Defense counsel then pursued hypothetical possibility questions based on the fact that Spencer had sneezed at some point during the drive.

> 28. Q. Could you have gone over the fog line while your eyes were closed?
>
> A. Yes, it's possible.
>
> Q. So did you go over the fog line? I believe I asked you that and you said you weren't sure.
>
> A. ... I don't believe I went over the fog line.
>
> Q. ... in the seconds that you were sneezing and your eyes were closed,

is it possible that you went over the fog line and just didn't realize it?

A. I would say that's speculation and there's always the possibility.

MR. SPENCER: ... I want to object to the use of your term seconds, because typically a sneeze lasts milliseconds.

Q. Okay. That's fair.

29. R. 88, PageID ## 577-579; R. 96, PageID ## 725-726. The distinction is critical. "Could it possibly have happened?" is a hypothetical possibility question; "Did it happen?" is a historical-fact question. The former did not establish the time, place, duration, or occurrence of either alleged crossing. The hypothetical also did not establish when Spencer's eyes were closed, whether that moment coincided with either alleged event, or whether his automobile was then near the fog line. Spencer's answer that a crossing was "possible" therefore established theoretical possibility, not historical occurrence. His direct historical answer remained: "I don't believe I went over the fog line." The word "believe" qualified the degree of certainty; it did not reverse the direction of the testimony.

### C. The stop produced no objective impairment evidence

30. Once stopped, Spencer told Ganshirt he had been "probably sneezing" and had allergies. R. 88, PageID # 576. Ganshirt did not smell alcohol, did not see open containers, and was able to communicate with Spencer. R. 99, PageID # 755. He inquired about a narcotics-detection dog, but none was nearby. Id. He did not

conduct field-sobriety testing and did not issue a DUI citation. Instead, he issued a careless-driving citation under KRS § 189.290.

D. The record did not identify a concrete roadway safety interaction

31. Ganshirt's discovery responses stated that there were no other cars in the area at the initial intersection. For the later period, he asserted generally that there was vehicular traffic in the area but could not identify the specific vehicles that allegedly passed "just before or during the traffic stop," their proximity to Spencer, or any interaction with Spencer's automobile; he also did not recall whether pedestrians were present. R. 85-3. The body-camera recording begins with the stop and depicts no vehicle passing during the recorded encounter. R. 89. The camera does not establish what occurred before recording began, but for the period it actually depicts it supplies no concrete traffic interaction supporting the claimed safety concern. Spencer relies on these circumstances not to argue that actual injury is a statutory element, but to show the absence of objective contextual facts connecting the disputed lane movement to the statute's enacted concern for the safety and convenience of pedestrians and other vehicles.

## SUMMARY OF THE ARGUMENT

32. The judgment should be vacated because its foundation is a Rule 56 factual determination the court was not entitled to make. The R&R quoted Spencer's sworn statement, "I don't believe I went over the fog line," yet treated "I don't recall" as though it meant only an absence of memory and treated

hypothetical possibility answers as support for occurrence. In context, "I don't recall" was consistent with Spencer's position that he did not believe the alleged event occurred, and the later direct answer made that position explicit. The R&R nevertheless credited Ganshirt's competing account and declared that the crossing happened: "he did." Under *Anderson*, *Tolan*, and this Court's published decision in *Gambrel*, Rule 56 did not permit the court to choose between competing historical accounts when no objective recording captured the alleged crossing.

33. *Wysong* does not authorize that result. *Wysong* involved a plaintiff who had no memory of the relevant use-of-force events and lacked contrary evidence, while the officers' version was supported by an independent witness. Spencer remembered the surrounding encounter, testified from personal experience as the driver, expressly stated "I don't believe I went over the fog line," and identified circumstantial evidence bearing on motive and credibility. Ganshirt's own descriptions also varied materially: the record contains "two occasions," "several times," and "on the fog line or over the fog line," and when asked directly for the number of crossings Ganshirt supplied a location but no number. *Wysong*'s rule against defeating summary judgment with pure absence of memory cannot be converted into a rule that this record is "nothing."

34. The statutory and probable-cause analysis independently requires reversal. KRS § 189.290 did not establish a fog-line offense, a "repeated" element, or a two-

occurrence threshold. It required careful operation "with regard for the safety and convenience of pedestrians and other vehicles upon the highway." The district court relied on *Copley* and *Smith* to treat two alleged crossings within several minutes as sufficient as a matter of law. But neither *Copley* nor *Smith* created a binding crossing-the-line rule, much less a binding two-crossing clause. *Copley* is a nonbinding district-court decision and should be limited to its facts or rejected insofar as it is read to create an automatic rule. The broader case law demonstrates a continuum, not a numerical threshold: number must be considered with frequency, distance, duration, degree of departure, traffic, roadway conditions, and surrounding circumstances.

35. Ganshirt's own Request for Admission response underscores the categorical theory challenged here: he asserted that driving "on or over" the white fog line is sufficient for reasonable suspicion or probable cause. R. 85-5, PageID # 480. That formulation collapses materially different conduct into a single enforcement rule and cannot substitute for the statute or binding precedent.

36. Because Rule 56 did not permit the district court to resolve the disputed crossing in Ganshirt's favor, and because no binding precedent makes two alleged fog-line movements automatically sufficient under KRS § 189.290, probable cause could not be conclusively established on this record. Once that foundation is removed, the Fourth Amendment claim requires further proceedings, and the First

Amendment claim must be reconsidered together with the direct chronology: Spencer displayed the protected gesture; Ganshirt turned around and followed him; the alleged unrecorded traffic conduct came later; Ganshirt then stopped and cited Spencer; and Ganshirt ended the encounter by telling him not to "flick me off" if he did not want to "draw attention" to himself.

37. The First Amendment ruling contains a separate legal problem. The R&R expressly acknowledged that neither the Supreme Court nor the Sixth Circuit had extended *Nieves*'s retaliatory-arrest rule to a traffic stop like this one, but extended it anyway because it perceived "no reason to distinguish" the contexts. The Supreme Court framed *Nieves* around arrests, and this Court's recent published *Grady* decision likewise addresses retaliatory arrest. The extension to a non-arrest traffic stop and citation should not be treated as settled law, particularly where the record contains direct speech-linked motive evidence.

38. Finally, Spencer preserved a Rule 30(e) objection that the deposition filed by Ganshirt omitted the timely signed errata and acknowledgment Spencer had submitted after review. The filed transcript itself contains a blank acknowledgment page referring to an errata page that is absent. That issue need not independently invalidate the deposition to matter: the court relied heavily on the deposition to resolve the central factual dispute while failing to meaningfully address the asserted incompleteness. At minimum, remand should permit consideration of the

complete deposition record. Qualified immunity cannot cure a judgment reached by assuming the disputed facts against Spencer. The appropriate relief is to vacate the judgment and remand for proceedings under the correct Rule 56, statutory, Fourth Amendment, and First Amendment standards.

## ARGUMENT

### Standard of Review

39. This Court reviews a grant of summary judgment de novo, applying the same Rule 56 standard as the district court. The evidence and all reasonable inferences must be viewed in favor of the nonmovant whose claim is being tested. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Credibility determinations, weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Cross-motions do not alter that rule; each motion must be assessed with the required inferences drawn for the party opposing that motion.

40. Pure legal questions, including the scope of First Amendment doctrine and interpretation of the legal standard governing probable cause, are reviewed de novo. Qualified-immunity rulings at summary judgment are also reviewed de novo on the facts taken in the nonmovant's favor. To the extent the September 2 order denying Rule 59(e) is relevant to preservation and the district court's continued reasoning, Rule 59(e) decisions are generally reviewed for abuse of discretion, while embedded legal questions remain subject to de novo review.

## I. THE DISTRICT COURT IMPROPERLY RESOLVED A MATERIAL HISTORICAL FACT AT SUMMARY JUDGMENT AND MISAPPLIED WYSONG.

### A. The record contained sworn testimony inconsistent with Ganshirt's account.

41. The dispositive historical question was whether Spencer actually crossed the fog line in the manner Ganshirt claimed before the stop. Ganshirt said yes. Spencer never admitted that allegation. When first asked, "Did you go over the white fog line?" Spencer answered, "I don't recall." R. 88, PageID # 576. That answer was not testimony that the crossing occurred but had been forgotten; it was consistent with not recalling an event Spencer did not believe happened. When counsel returned directly to the historical question, Spencer removed any ambiguity about the direction of his testimony: "I don't believe I went over the fog line." R. 88, PageID # 578. The qualifier "believe" describes the degree of certainty; it does not transform the answer into agreement with Ganshirt.

42. The "possible" answers do not change that. Counsel first asked whether there was "at least some period" of the drive when Spencer's eyes were closed because he was sneezing, and then asked whether he "could" have crossed the line while his eyes were closed. R. 88, PageID # 577. That question did not establish when the eye closure occurred, where Spencer's vehicle was, whether it coincided with either alleged event, or how long it lasted. When counsel later assumed "seconds," Spencer objected that a sneeze "typically" lasts "milliseconds," and

counsel responded, "Okay. That's fair." R. 88, PageID # 579. The hypothetical therefore established theoretical possibility, not historical occurrence.

43. The logical weakness is apparent from ordinary experience. A driver's eyes are also closed momentarily during a normal blink; one could ask whether a vehicle "could" cross a painted line during such an interval. An acknowledgment that something is theoretically possible says little about whether the claimed historical event actually happened. Rule 56 required the court to distinguish possibility from occurrence rather than use one as proof of the other.

B. Ganshirt's own descriptions materially contradicted the supposedly fixed account.

**44. Ganshirt contradicted himself outright.** The R&R called his recollection "consistent," but the underlying discovery does not present one fixed description. The R&R and citation described "a few seconds on two occasions." R. 96, PageID ## 718, 724. Yet in his Third Interrogatory answers Ganshirt said Spencer's vehicle was observed "several times driving on the fog line or over the fog line in the right-hand emergency lane." R. 85-4, PageID # 475.

45. Spencer had specifically asked Ganshirt to state "the number of times" he personally observed a contact or crossing if there were multiple events. Ganshirt's answer supplied the location — "just north of Day One Drive on Aero Parkway" — but did not state a number. R. 85-4, PageID # 475. The record therefore does not present a single, objectively measured account of two established crossings. It

presents "two occasions," "several times," and "on the fog line or over the fog line."

46. Those are not harmless verbal variations where the dispositive legal theory turns on both number and degree of departure. "On the fog line" is not the same historical fact as "over the fog line into the shoulder." And "several times" is not the same fixed numerical description as "two occasions." At summary judgment, the court could not harmonize those differences in Ganshirt's favor and then label his account "uncontroverted."

C. *Gambrel* and *Anderson* prohibit selecting the more believable witness at Rule 56.

47. In *Gambrel v. Knox County*, 25 F.4th 391 (6th Cir. 2022), this Court emphasized that when witnesses give differing accounts, a court at summary judgment cannot credit whichever witness it finds more believable; that is the jury's job. The principle is ordinary Rule 56 law, not a special rule for any particular constitutional claim. *Anderson* likewise assigns credibility determinations and evidentiary weighing to the factfinder. 477 U.S. at 255.

48. The district court crossed that boundary. The R&R first reproduced Spencer's statement, "I don't believe I went over the fog line." R. 96, PageID # 725. It nevertheless later characterized Spencer's testimony as noncommittal, called Ganshirt's observations "uncontroverted," invoked the phrase "cannot beat something with nothing," and concluded: "there is no material issue of fact as to

whether Spencer crossed the fog line: he did." R. 96, PageID # 728. That conclusion disregarded not only Spencer's affirmative testimony pointing against occurrence but also Ganshirt's own varying descriptions of the number and nature of the alleged movements.

49. The district judge was squarely alerted to the problem. Spencer's objection stated that he "did not concede a fog-line violation; he stated he did not believe it occurred and characterized contrary suggestions as speculation." R. 99, PageID # 762 (summarizing R. 97). Yet the court treated Spencer's testimony as an "absence of evidence" and held that Ganshirt therefore went unrebutted. R. 99, PageID ## 762-763. More tellingly, the district court itself described the R&R as reaching its fog-line conclusion "after weighing Ganshirt and Spencer's respective recollections of the minutes preceding the traffic stop." R. 99, PageID # 757. That description identifies the Rule 56 problem rather than curing it: weighing competing recollections is the jury's function, not the court's at summary judgment.

D. *Wysong* does not convert Spencer's testimony into "nothing."

50. *Wysong v. City of Heath*, 260 F. App'x 848 (6th Cir. 2008), does not authorize this result. *Wysong* addressed a plaintiff who admitted that he did not remember the relevant use-of-force events. The record there also included accounts from the officers and a third-party witness supporting the challenged conduct. *Wysong* explained that a party cannot create a factual dispute through a naked

litigation assertion unsupported by personal knowledge when he admits no memory of the events.

51. Spencer's record is materially different. He did not claim total amnesia concerning the encounter. He remembered the surrounding drive and stop; he testified from personal experience as the driver; and he gave a sworn historical answer inconsistent with Ganshirt's claim: "I don't believe I went over the fog line." The contrary "possible" answers were expressly hypothetical, and the assumed duration behind one of them was challenged in the transcript itself. Unlike the objective video in *Scott v. Harris*, 550 U.S. 372 (2007), no recording of the alleged pre-stop crossing "blatantly contradicted" Spencer's testimony. And unlike *Wysong*, no disinterested eyewitness resolved the central event in Ganshirt's favor.

52. *Wysong* can coexist with *Gambrel*. A witness who affirmatively admits no memory of the relevant event and offers no contrary evidence may fail to contradict affirmative evidence. But this record contains more: Spencer's sworn answer pointed against occurrence; the hypothetical answers did not establish occurrence; and Ganshirt's own discovery descriptions varied on count and whether the vehicle was "on" or "over" the line. Once the record contains competent evidence inconsistent with the movant's account, the court may not decide which version is more credible. The weight of that evidence belongs to the jury.

E. The error was outcome-determinative.

53. The factual ruling supplied the predicate for everything that followed. Once the court declared that the crossings occurred, it treated those crossings as a KRS § 189.290 violation, treated the violation as probable cause, rejected the Fourth Amendment claim, and then used probable cause to defeat the First Amendment claim. R. 96, PageID ## 728-731; R. 99, PageID ## 763-769. A Rule 56 error at the first step therefore infected both constitutional claims and requires vacatur.

## II. THE COURT CONVERTED FACT-SPECIFIC FOG-LINE DECISIONS INTO AN UNDEFINED NUMERICAL RULE NOT CONTAINED IN KRS § 189.290.

A. The statute does not contain a fog-line or "repeated" element.

54. The version of KRS § 189.290 governing September 27, 2023 required a motorist to operate "in a careful manner, with regard for the safety and convenience of pedestrians and other vehicles upon the highway." It separately prohibited willful operation that injured the highway. The statute did not say "do not cross the fog line." It contained no lane-marker element, shoulder element, rumble-strip element, "repeated" element, or numerical threshold.

55. Kentucky statutory interpretation requires giving effect to the words the General Assembly actually enacted rather than rendering portions of the text meaningless. See *A.H. v. Louisville Metro Gov't*, 612 S.W.3d 902, 908 (Ky. 2020); *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011). The phrase "with regard for the safety and convenience of pedestrians and other

vehicles" must therefore do some work. Spencer does not contend that the Commonwealth must prove an actual collision or completed injury. He contends that the statutory phrase "with regard for the safety and convenience of pedestrians and other vehicles" must require an objective factual basis showing that the alleged manner of operation actually implicated the safety or convenience of another road user; otherwise, the words "safety and convenience" are rendered meaningless, particularly where the immediate area is devoid of pedestrians or other vehicles whose safety or convenience could have been affected.

Even if this case were viewed as a mistake-of-law case, Heien v. North Carolina does not save the stop. Heien protects only an objectively reasonable mistake of law. It does not allow an officer or court to enlarge a traffic statute by adding a fog-line rule absent from the statutory text. KRS § 189.290 contains no fog-line element, lane-marker element, shoulder element, rumble-strip element, "repeated crossing" element, or perfect-lane-travel requirement. Reading the statute as a categorical fog-line offense was therefore not objectively reasonable.

**B. "Repeated" describes a count; it does not establish legal sufficiency.**

56. The R&R held that "crossing the fog line for several seconds on two occasions within several minutes is sufficient to provide probable cause" under § 189.290. R. 96, PageID # 729. But the underlying sequence was not measured with that precision. Ganshirt's supplemental answer placed the U-turn roughly two to three minutes before the stop, and he admitted remaining behind Spencer for more

than one minute; those answers establish sequence and a rough overall window, not the exact time, distance, separation, or duration of each alleged lane movement. R. 85-6, PageID # 484; R. 85-7.

57. Spencer can concede the semantic point that two occurrences may be called "repeated" in ordinary speech. The legal issue remains. Count is not frequency without a denominator. Five departures within a quarter mile and five departures over two hundred miles have the same count but radically different frequency and safety significance. Likewise, two prolonged shoulder excursions amid surrounding traffic differ materially from two momentary contacts separated by distance or time in otherwise uneventful driving. "Repeated" cannot supply the missing denominator.

58. The constitutionally relevant picture therefore cannot be reduced to "two." At minimum it includes number, temporal concentration, distance, duration, degree of departure, roadway conditions, traffic, surrounding hazards, and other driving behavior. The cases themselves repeatedly discuss those variables. Their variation demonstrates a continuum, not an invisible two-strike threshold.

59. The district court later denied that it had imposed a categorical rule while stating that a driver's repeated failure to maintain lane "in and of itself" demonstrates a lack of regard for the safety and convenience of other vehicles. R. 99, PageID # 763. That formulation is the categorical reasoning Spencer

challenges: it makes repetition independently dispositive instead of asking what the number, duration, degree of departure, roadway conditions, traffic, and surrounding circumstances actually showed.

### C. Ganshirt's own formulation exposes a de facto per-se fog-line rule.

60. In his response to Request for Admission No. 4, Ganshirt stated that "driving on or over the white fog line is sufficient to establish reasonable articulable suspicion or probable cause to initiate a traffic stop." R. 85-5, PageID # 480. **That is a de facto per-se fog-line rule. His formulation does not even distinguish on from over.**

61. The officer's legal formulation is not the statute. KRS § 189.290 does not say that being "on" a fog line is an offense; it does not say that crossing a fog line once is an offense; and it does not say that a second alleged movement automatically converts ordinary lane-position evidence into probable cause. Treating Ganshirt's formulation as controlling would replace the enacted careful-driving standard with an enforcement-created line-contact rule.

### D. *Copley* should be limited to its facts or rejected to the extent it creates an automatic rule.

62. *United States v. Copley*, No. 4:16-cr-10-JHM, 2016 WL 3964070 (W.D. Ky. July 19, 2016), is a federal district-court decision. It does not bind this Court on Kentucky statutory meaning. *Copley* involved a vehicle traveling across the fog line and onto rumble strips more than once over approximately three miles. The court reasoned that actual harm or inconvenience was unnecessary and that

repeated shoulder travel demonstrated lack of care. Spencer does not dispute that completed injury is unnecessary, but he challenges any broader reading under which neither safety nor convenience must actually be implicated. Such a reading would deprive the statutory words "safety and convenience" of operative effect.

63. This Court may consider *Copley*'s reasoning, but it may also distinguish it, confine it to its factual pattern, or reject a broader reading. Neither *Copley* nor *Smith* created a binding crossing-the-line rule. Neither announced that merely being on a fog line, crossing it once, or having two alleged movements automatically establishes careless driving or probable cause. If *Copley* is understood to create such an automatic rule regardless of distance, duration, concentration, traffic, degree of departure, or objective safety context, that reasoning should be rejected.

64. The limiting-principle problem is concrete. Under the broadest reading, two momentary departures one hundred miles apart would be treated the same as repeated shoulder travel over a short, congested stretch because both are "repeated." Nothing in § 189.290 commands that result. Kentucky Constitution § 2's prohibition on absolute and arbitrary governmental power reinforces the ordinary interpretive reason not to convert an open-textured safety statute into an undefined, enforcement-created numerical rule.

E. *Smith* and *Baker* reinforce the need for context rather than establish a two-strike threshold.

65. The district court also relied on *United States v. Smith*, No. 18-cr-46-DLB, 2019 WL 1756279 (E.D. Ky. Apr. 19, 2019), aff'd, No. 19-6448, 2020 WL 7587556 (6th Cir. Sept. 2, 2020). *Smith* involved "numerous" crossings within a few miles, testimony that shoulder driving could endanger pedestrians and stranded motorists, and a criminal suppression proceeding in which the court could make credibility findings after an evidentiary hearing. Here, by contrast, Rule 56 prohibited weighing competing accounts. *Smith* therefore does not establish that two disputed alleged movements — still less "on or over" line positioning — automatically create probable cause.

66. *Baker v. Commonwealth*, 475 S.W.3d 633 (Ky. Ct. App. 2015), likewise cuts against a categorical rule. The officer followed the vehicle for almost two miles on snowy and icy roads, observed it hug the fog line and sway within the lane, and connected the pattern to suspected impairment. *Baker* emphasized that the officer was not expecting the driver to travel a "perfect vector" down the road; the inquiry remained whether the driving, viewed in context, supported reasonable suspicion. A rule that repeated lane movement "in and of itself" is sufficient effectively imposes the perfect-lane standard *Baker* said it was not imposing. *Baker* therefore supports contextual analysis, not an automatic two-strike rule.

F. *Freeman*, *Gross*, and *Warfield* illustrate the broader Fourth Amendment principle that lane movement must be assessed contextually.

67. Spencer does not rely on *Freeman*, *Gross*, and *Warfield* as controlling constructions of Kentucky's statute; the underlying state traffic provisions differ. He relies on them for a broader constitutional principle: this Court does not mechanically count contacts with painted lines and stop the analysis there.

Spencer does not rely on Freeman, Gross, and Warfield as controlling constructions of Kentucky's statute; the underlying state traffic provisions differ. **He relies on them for a broader constitutional principle: this Court does not mechanically count contacts with painted lines and stop the analysis there.**

**Under vertical stare decisis, the district court was required to give effect to this Court's published Fourth Amendment traffic-stop precedent**. Freeman and Gross do not control the meaning of KRS § 189.290, but they do control the method of analysis: a court must examine the actual statute, the actual facts, and the surrounding circumstances rather than mechanically treating painted-line movement as dispositive. The district court failed to give proper stare decisis effect to that binding Fourth Amendment approach when it treated two alleged fog-line movements as sufficient "in and of itself," while relying on nonbinding, fact-specific decisions involving materially different records

Warfield, although not binding in the same way as published Sixth Circuit precedent, reinforces the same point: lane-line contact must be evaluated under the

governing statute and surrounding facts, not converted into an automatic probable-cause formula

68. In *United States v. Freeman*, 209 F.3d 464, 466-67 (6th Cir. 2000), a motor home crossed into the emergency lane for roughly 20 to 30 feet. This Court rejected the idea that one isolated imperfection necessarily amounted to a traffic violation under the applicable lane statute. In *United States v. Gross*, 550 F.3d 578, 583-84 (6th Cir. 2008), the vehicle straddled lanes for at least 100 yards - only a few seconds at highway speed - and this Court still examined the nature of the maneuver and absence of additional erratic driving rather than treating line position alone as decisive. *Warfield* likewise reflects a totality-based treatment of minor lane behavior rather than an automatic line-contact formula.

69. These cases do not dictate the meaning of KRS § 189.290. They do show why the district court's context-collapse is constitutionally problematic. The probable-cause inquiry is practical and fact dependent. The adjective "repeated" cannot substitute for the underlying facts that give repetition legal meaning.

70. That contextual approach also accords with the Supreme Court's longstanding caution that "[i]t is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Boyd v. United States*, 116 U.S. 616, 635 (1886). *Boyd* arose in a different Fourth- and Fifth-Amendment setting; Spencer invokes that admonition

only as a general constitutional caution, not as the substantive probable-cause test governing this stop. The concern here is incremental expansion: fact-specific decisions involving materially different conduct should not be transformed, step by step, into an unwritten rule that repeated line movement is sufficient "in and of itself," regardless of the surrounding circumstances.

## III. THE FOURTH AMENDMENT CLAIM COULD NOT BE RESOLVED AGAINST SPENCER ON THE DISPUTED RECORD.

71. A traffic stop is a seizure. Probable cause exists when reasonably trustworthy facts and circumstances would warrant a prudent person in believing that an offense occurred. See *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Ferguson*, 8 F.3d 385, 391-92 (6th Cir. 1993) (en banc). The inquiry is objective, but objective does not mean categorical. It requires the actual facts known to the officer and the elements of the asserted offense.

72. *Whren v. United States*, 517 U.S. 806 (1996), does not eliminate that prerequisite. *Whren* makes subjective motive irrelevant to whether an otherwise valid traffic seizure is supported by objective probable cause. It does not authorize a court to assume the disputed traffic facts, rewrite the underlying statute, or manufacture probable cause from a factual premise that Rule 56 required the court to view in Spencer's favor.

Nor does a mistake-of-law theory cure the problem. Under Heien, any legal mistake must be objectively reasonable. An interpretation that adds a categorical

fog-line rule to KRS § 189.290 is not objectively reasonable where the statute does not mention fog lines, lane markers, shoulders, rumble strips, repeated crossing, or perfect-lane travel.

73. When Ganshirt's summary-judgment motion is evaluated properly, at least three independent obstacles prevent judgment as a matter of law. First, Spencer's sworn testimony pointed against the claimed crossing and no objective recording resolves the event. Second, Ganshirt's own descriptions varied materially between "two occasions," "several times," and "on the fog line or over the fog line." Third, even if some lane movement is assumed solely for argument, no binding precedent makes two alleged fog-line movements automatically sufficient under § 189.290.

74. The surrounding record matters to that legal analysis. Ganshirt admitted that the protected gesture occurred before the alleged fog-line event and that before that event he had not observed another specific traffic infraction. He could not identify a particular pedestrian or specific vehicle whose safety or convenience interacted with Spencer's alleged movement. The stop produced no odor of alcohol, open container, failed sobriety test, collision, near collision, or citation for another driving offense. Those circumstances do not prove as a matter of law that Spencer drove carefully; they demonstrate why the court could not treat "two" as a complete substitute for the statutory and constitutional inquiry.

75. The R&R nevertheless held that the alleged crossings themselves supplied an objective basis for careless driving. R. 96, PageID # 729. That conclusion cannot stand independently of the antecedent errors identified above: the court first resolved the disputed historical event in Ganshirt's favor and then treated the alleged lane movements under a categorical numerical theory not supplied by binding precedent. Probable cause therefore was not conclusively established on this summary-judgment record.

## IV. THE FIRST AMENDMENT RETALIATION CLAIM PRESENTS A JURY QUESTION WHEN THE RECORD IS VIEWED IN SPENCER'S FAVOR.

### A. The gesture was protected and the chronology supplies motive evidence.

76. *Cruise-Gulyas v. Minard*, 918 F.3d 494, 497-98 (6th Cir. 2019), squarely recognizes that a middle-finger gesture directed at a police officer is protected expression: "Any reasonable officer would know that a citizen who raises her middle finger engages in speech protected by the First Amendment." *Sandul v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997), likewise treated the combination of allegedly shouting "fuck you" and displaying the middle finger as protected expression rather than fighting words. Thus, Ganshirt's description of Spencer's expression as "extremely bizarre and outrageous" does not strip the expressive conduct of First Amendment protection. The summary-judgment record also identified Ganshirt's admissions that he had been trained that such expressive gestures are protected. R. 85, Ex. 5, First RFA Nos. 6 & 8.

77. Ganshirt's own admissions then establish the chronology. Second RFA No. 3 asked: "Admit or deny that you observed the gesture described in Request No. 1 prior to the time you claim Plaintiff's vehicle allegedly touched or veered over the right fog line." Ganshirt answered: "Admit, but the hand gesture was not the reason for the traffic stop." Second RFA No. 4 asked: "Admit or deny that before the time you allege Plaintiff's vehicle touched or veered over the right fog line, you did not observe any other specific driving behavior that you considered a traffic infraction." He answered: "Admit, but Plaintiff's behavior warranted further investigation." R. 85-7.

78. Second RFA No. 5 then asked: "Admit or deny that after observing the gesture described in Request No. 1, you turned your patrol vehicle around or otherwise changed direction to follow Plaintiff's vehicle." Ganshirt answered: "Admit, but the hand gesture was not the reason for the traffic stop." And Second RFA No. 7 asked whether "at no point during your interaction with Plaintiff" he observed "any indicators of impairment such as slurred speech, odor of alcohol, or glassy eyes." Ganshirt answered: "Admit, but Plaintiff's behavior warranted further investigation." R. 85-7.

79. Those answers matter because Ganshirt's disclaimer that the hand gesture was not "the reason for the traffic stop" does not answer the different causation question: what caused him to reverse direction and begin following Spencer before

the alleged fog-line conduct existed. His own narrative supplies that link. Ganshirt alleged that Spencer pulled himself over the steering wheel, banged his hand against the windshield while displaying the middle finger, stared toward Ganshirt, and allegedly screamed "fuck you" several times. He characterized the conduct as "extremely bizarre and outrageous," stated that it caused him to suspect intoxication, and stated that he then "conducted a U-turn ... in order to further observe Plaintiff's operation of his motor vehicle." R. 85-7. The middle finger and the allegedly screamed profanity are protected expression under *Cruise-Gulyas* and *Sandul*; the alleged physical movements may be considered separately, but Ganshirt's own account combined the protected expression with what he says triggered the U-turn.

B. *Mt. Healthy* and *Thaddeus-X* required the causation dispute to go to the jury.

80. Under *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc), a retaliation claim requires protected conduct, adverse action, and causation. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), further provides that once protected expression is shown to have been a substantial or motivating factor, the defendant must show that the same action would have been taken absent the protected conduct. Spencer had evidence from which a jury could find that link: the protected expression came first; Ganshirt then changed direction and followed; only afterward did he claim the disputed, unrecorded fog-line conduct; the stop and citation followed; and Ganshirt ended the encounter by

saying, "if you don't want to draw attention to yourself, don't flick me off." R. 89 at 09:50-09:58; R. 99, PageID # 756.

81. On this record, the court could not hold as a matter of law that Ganshirt established the same stop and citation would have occurred absent the protected expression. The supposed intervening traffic basis was itself disputed, and Ganshirt's own admissions show that his change in direction and intensified observation preceded it. His assertion that the gesture was not "the reason for the traffic stop" was evidence for a jury to weigh against the chronology, his "behavior warranted further investigation" answers, his narrative explanation for the U-turn, and his closing statement expressly returning to the protected gesture. The district court erred by bypassing that causation dispute after first resolving the contested probable-cause premise in Ganshirt's favor.

82. Spencer does not argue that the U-turn or ordinary following on a public road was itself a Fourth Amendment seizure. The U-turn is First Amendment motive and causation evidence: it followed protected expression and preceded the later alleged traffic conduct. Whether the disputed traffic basis genuinely existed and whether protected expression motivated the ensuing enforcement are questions that should not have been resolved against Spencer at summary judgment.

## V. THE DISTRICT COURT SHOULD NOT HAVE EXTENDED *NIEVES* FROM RETALIATORY ARRESTS TO THIS TRAFFIC STOP AND CITATION AS THOUGH THAT EXTENSION WERE SETTLED LAW.

83. *Nieves v. Bartlett*, 587 U.S. 391 (2019), created a probable-cause rule for retaliatory-arrest claims, subject to a narrow exception for objective evidence of differential treatment. *Gonzalez v. Trevino*, 602 U.S. 653 (2024), clarified that the exception does not demand a virtually identical comparator in every case, while still requiring objective evidence. This Court's recent published decision *Grady v. Cratsenburg*, 170 F.4th 995 (6th Cir. 2026), applies and develops that framework in the retaliatory-arrest setting.

84. The R&R candidly acknowledged the doctrinal gap: "Neither the Supreme Court nor the Sixth Circuit have addressed the extension of the *Nieves* holding to the traffic stop context." R. 96, PageID # 731. It nevertheless extended the arrest rule because it perceived "no reason to distinguish" a traffic stop from an arrest and reasoned that both involve probable cause. Id. That is a legal extension, not application of controlling precedent.

85. There are reasons to proceed cautiously. Arrests and routine traffic citations differ in severity, frequency, and enforcement discretion. Minor traffic rules can be ubiquitous and selectively enforced, which is the very concern that produced the *Nieves* exception. A rule that automatically converts any arguable traffic basis into a complete First Amendment defense risks giving officers

unusually broad discretion to retaliate for protected criticism while pointing to minor driving imperfections after the fact.

86. Nothing in this argument asks the Court to hold that subjective motive invalidates an objectively lawful stop under the Fourth Amendment. The Fourth Amendment and First Amendment questions are distinct. *Whren* concerns objective reasonableness of the seizure; a retaliation claim asks whether protected expression caused adverse governmental action. The district court imported an arrest-specific causal rule into the latter inquiry without controlling authority and despite direct motive evidence.

87. At minimum, because the court itself recognized the absence of controlling Supreme Court or Sixth Circuit authority on the extension, it should not have treated the extension as a settled proposition sufficient to erase the retaliation claim at summary judgment. If the Court concludes *Nieves* does apply, the antecedent probable-cause error still requires reversal. And *Gonzalez* counsels against an unduly rigid comparator formulation in assessing any exception on remand.

## VI. RELIANCE ON THE INCOMPLETE RULE 30(e) DEPOSITION RECORD COMPOUNDED THE RULE 56 ERROR.

88. Spencer raised the deposition-record problem before judgment. In his combined summary-judgment reply and response, he stated that he had timely reviewed the transcript, signed the acknowledgment, completed Rule 30(e) corrections, and submitted them, but that Ganshirt's filed version omitted the

signed acknowledgment and errata. R. 92, PageID # 687. His objections again explained that his concern was broader than spelling or capitalization: the filed record lacked his signature and the Rule 30(e) errata. R. 97, PageID # 738.

89. The filed transcript itself is facially consistent with an incomplete record. Page 143 contains an acknowledgment stating that Spencer reviewed the transcript and had an opportunity to note corrections on an errata page, but the signature line in the filed copy is blank. R. 88, PageID # 661. The next and final page is the reporter's certification. R. 88, PageID # 662. No errata sheet appears in the filed 144 pages.

90. Rule 30(e) requires that when timely review is requested, the deponent be allowed to review the transcript or recording and make identified changes with reasons; the officer's certificate must note whether review was requested and attach timely changes. Sixth Circuit authority also recognizes limits on using errata to rewrite substantive testimony after the fact. See *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560, 565-66 (6th Cir. 2009). Spencer's appellate point does not depend on a right to rewrite testimony. It is narrower: the court should not have treated the filed copy as unquestionably complete while using it to resolve the central factual dispute and while failing to address the preserved assertion that the completed Rule 30(e) material had been omitted.

91. The R&R instead narrowed the issue to objections Spencer had made to the notice of deposition and stated that Rule 30(e) concerns corrections to the transcript. R. 96, PageID # 724. That did not resolve the later, specific assertion that Spencer actually reviewed, signed, corrected, and submitted the transcript materials and that those materials were missing from the filed copy. The omission is especially consequential because the district court's summary-judgment ruling turned on a close characterization of Spencer's words and memory.

92. This issue is therefore best understood as reinforcing the Rule 56 error and supporting remand, not as an accusation of intentional alteration. On remand, the complete Rule 30(e) materials can be identified and the deposition record can be considered in its proper form. Even without the errata, however, the filed transcript already contains "I don't believe I went over the fog line," so reversal does not depend on proving what the omitted corrections said.

## VII. QUALIFIED IMMUNITY DOES NOT INDEPENDENTLY SUSTAIN THE JUDGMENT ON THE FACTS THAT MUST BE ASSUMED FOR SPENCER.

93. Ganshirt invoked qualified immunity and argued that he at least had arguable probable cause because courts had treated repeated fog-line movements as careless driving. R. 86. But a qualified-immunity analysis at summary judgment cannot begin by assuming the disputed facts in the officer's favor. The court must first take the facts and reasonable inferences in Spencer's favor unless objective evidence blatantly contradicts them. *Scott*, 550 U.S. at 380; *Tolan*, 572 U.S. at 657.

94. If a jury could find that the alleged fog-line crossings did not occur as Ganshirt claimed, then the asserted traffic justification cannot support immunity at this stage. And if the legal sufficiency of the alleged movements depends on context that the district court improperly collapsed into a numerical rule, the arguable-probable-cause question likewise cannot be resolved by importing the same flawed premise.

**95. The § 1983 Notwithstanding Clause objection was expressly preserved.**

96. Spencer also preserved a separate textual and historical objection to qualified immunity. In his combined summary-judgment response and reply and attached memorandum, Spencer argued that the Civil Rights Act of 1871 as enacted placed between "shall" and "be liable" the phrase "any such law, statute, ordinance, regulation, custom or usage of the State to the contrary notwithstanding," and that this Notwithstanding Clause undercuts importing contrary state-law and common-law immunity defenses into § 1983. R. 92, PageID # 686; R. 92-1. The R&R expressly acknowledged that filing and its contention that qualified immunity derives from a scrivener's error, but declined to address the issue because it did not reach Ganshirt's qualified-immunity defense. R. 96, PageID # 734 n.4.

97. Because Ganshirt may again invoke qualified immunity as an alternative ground for affirmance, Spencer preserves that statutory-text and historical objection here. This Court need not invalidate qualified immunity to resolve this

appeal; existing Supreme Court precedent remains binding. But the preserved Notwithstanding Clause argument supplies an additional reason not to expand qualified immunity beyond what binding precedent requires. On the facts Rule 56 requires to be taken in Spencer's favor, conventional qualified-immunity doctrine does not independently sustain the judgment in any event.

98. The First Amendment right to direct an insulting middle-finger gesture at police without retaliatory enforcement was clearly established in this Circuit by *Cruise-Gulyas* before the 2023 incident. Qualified immunity therefore cannot be sustained merely by recharacterizing the protected expression as "bizarre" or undesirable. If a lawful traffic basis ultimately is proven, its effect on the retaliation claim can be addressed under the correct First Amendment framework. But qualified immunity is not an alternative route for affirming factfinding that Rule 56 prohibited.

## VIII. THE POST-JUDGMENT PROCEEDINGS PRESERVED THE SAME ERRORS AND DID NOT CURE THEM.

99. Spencer's Rule 59(e) motion did not create the appellate theories after judgment. It reiterated issues already raised in the summary-judgment response and specific objections, including the disputed fog-line factfinding, the mischaracterization of "I don't recall" as mere absence of memory, the undefined "repeated" standard, the statutory safety language, the nonbinding character of

*Copley*, and the use of probable cause to dispose of the retaliation claim. R. 101; see R. 92; R. 97.

100. The September 2 order denied relief principally because the district court believed it had already resolved those issues. It again characterized Ganshirt's version as the only evidence on the crossing and again relied on *Wysong*. It also reiterated that *Copley* and *Smith* supplied relevant instruction and rejected Spencer's contention that the analysis functioned as a per se rule. That post-judgment reasoning confirms preservation and sharpens the questions for de novo appellate review; it does not cure the underlying Rule 56 and legal errors.

101. Accordingly, the Rule 59(e) proceedings do not supply an independent basis for affirmance. They confirm that the district court adhered to the same factual and legal premises challenged above; the appeal therefore turns on whether those premises were permissible under Rule 56 and the governing First and Fourth Amendment standards.

## CONCLUSION

102. For the foregoing reasons, Plaintiff-Appellant Jeremy Spencer respectfully asks this Court to reverse the grant of summary judgment to Defendant-Appellee Jacob Ganshirt, vacate the June 19, 2026 judgment, and remand for further proceedings. The judgment rests on resolution of a genuinely disputed historical fact and on a categorical fog-line theory that no binding precedent makes dispositive. The Fourth Amendment claim and the speech-linked First Amendment retaliation claim should therefore be returned for consideration under the proper Rule 56 standards.

103. Spencer further requests that, on remand, the district court permit the deposition record to be completed or corrected to include any Rule 30(e) materials timely submitted and consider qualified immunity only on the factual record viewed in the proper summary-judgment posture. Spencer requests such other relief as this Court deems just and appropriate.

Regards,

Jeremy Spencer

Beneficiary, without prejudice or recourse
c/o [1891 Grovepointe Dr.]
[Florence, KY 41042]
Spencerj2121@yahoo.com
Date: 9/25/2026

## CERTIFICATE OF COMPLIANCE

104. Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) because it contains approximately 9,063 words, excluding the portions exempted by Rule 32(f). This brief uses a proportionally spaced 14-point Times New Roman typeface and one-inch margins.

Jeremy Spencer

## CERTIFICATE OF SERVICE

105. I certify that on September 7, 2026, I served a true and correct copy of this Brief of Plaintiff-Appellant upon counsel for Defendant-Appellee by first-class United States Mail, postage prepaid, addressed to Jeffrey C. Mando, Esq. and Casmir M. Thornberry, Esq., ADAMS LAW, PLLC, 40 West Pike Street, Covington, Kentucky 41011, and by email to jmando@adamsattorneys.com and cthornberry@adamsattorneys.com.

Jeremy Spencer

## ADDENDUM - DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

106. Pursuant to Sixth Circuit Rule 28 and the Court's briefing requirements, Appellant designates the following originating-court documents as relevant to the issues presented. PageID ranges are stated where available from the transmitted record.

| Record | Document | Relevant PageID / Portion |
|---|---|---|
| a. R. 27 | Amended Complaint | PageID ## 103-108 |
| b. R. 85 | Plaintiff's Motion for Summary Judgment / supporting exhibits | Including discovery materials cited in R. 96 and R. 99 |
| c. R. 86 | Defendant's Motion for Summary Judgment and combined response | Including R. 86-1 citation / asserted fog-line observations |
| d. R. 88 | Deposition of Jeremy Spencer | PageID ## 576-579; 661-662 |
| e. R. 89 | Body-worn camera recording | 09:50-09:58 |
| f. R. 92 | Plaintiff's combined reply / response to summary-judgment motions | PageID ## 679-687 |
| g. R. 92-1 | Plaintiff's Judicial Memorandum of Law - 42 U.S.C. § 1983 Notwithstanding Clause | Entire document |
| h. R. 93 | Defendant's reply in support of summary judgment | As cited in R. 96 |
| i. R. 96 | Report and Recommendation dated Apr. 29, 2026 | PageID ## 717-735 |
| j. R. 97 | Plaintiff's Objections to Report and Recommendation | PageID ## 736-748 |
| k. R. 98 | Defendant's Response to Objections | PageID ## 749-753 |
| l. R. 99 | Memorandum Order dated June 19, 2026 | PageID ## 754-770 |
| m. R. 100 | Final Judgment dated June 19, 2026 | Entire document |
| n. R. 101 | Plaintiff's Rule 59(e) Motion | Entire document |
| o. R. 102 | Protective Notice of Appeal | Entire document |
| p. R. 104 | Defendant's Response to Rule 59(e) Motion | Entire document |
| q. R. 105 | Plaintiff's Rule 59(e) Reply | Entire document |